780 So.2d 1241 (2001)
Toni C. KYLE, Plaintiff-Appellant,
v.
Glen H. KYLE, Defendant-Appellee.
No. 34,696-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 2001.
H. Russell Davis, Arcadia, Counsel for Appellant.
Paul Kitchens, Minden, Counsel for Appellee.
Before BROWN, CARAWAY & PEATROSS, JJ.
PEATROSS, J.
This appeal arises out of the trial court's awarding primary domiciliary custody of the parties' minor child, Caleb, during the nine months of the school year to the father, Glen Kyle ("Mr.Kyle"), and giving the mother, Toni Kyle Martin ("Mrs.Martin"), physical custody of the child during the summer months. Mrs. Martin appeals. For the reasons stated herein, we affirm.

FACTS AND PROCEDURAL BACKGROUND
The parties married on July 24, 1993. The Kyles lived in Homer, Louisiana, where Mr. Kyle was, and still is, the head football coach and a physical education teacher at Homer High School. Mrs. Martin was formerly a teacher of special education elementary school children. Caleb, now six years old, was born to the Kyles on September 7, 1994. The parties separated in November 1995; and Mrs. Martin moved to Ruston, Louisiana, and, a short time later, to Dubach, Louisiana. On June 27, 1996, Mrs. Martin obtained a default judgment of divorce naming her primary domiciliary parent of Caleb. She married Michael Martin in February 1997. After the marriage, Mr. Martin was offered the position of head baseball coach for the University of Arkansas at Monticello. He accepted the position and immediately moved to Monticello. Mrs. Martin joined him after the completion of the school year and is now employed by the Southeast Arkansas Educational Cooperative teaching young children with special needs.
From her first marriage, Mrs. Martin also has a daughter, Kaycie Roberson, now 10 years old. Mrs. Martin is Kaycie's primary domiciliary parent with Kaycie's *1242 father having frequent weekend and summer visitation.
The parties have, at all times, agreed that a joint custody arrangement is best for Caleb. When the parties separated, the issue of custody was settled by agreement with Mrs. Martin being the primary domiciliary parent subject to Mr. Kyle's visitation every other weekend, one night every other week and three weeks during the summer. The parties shared holidays on an equal basis. On February 5, 1997, Mr. Kyle filed a rule to change custody which was heard in July 1997. After a two-day trial, the trial court designated Mr. Kyle as Caleb's primary domiciliary parent without prejudice to a later determination of domiciliary parent when Caleb started school. The implementation plan directed a week-to-week physical custody schedule.
In August 1999 when Caleb started pre-kindergarten, Mr. Kyle filed a rule to establish the periods of custody and to determine the domiciliary parent for the school year. The trial court ordered an evaluation of the parties by the Methodist Children's Home ("MCH"). At trial, two MCH evaluators testified regarding their conclusions and report which recommended that Mr. Kyle be designated primary domiciliary parent. The trial court also considered the evidence previously adduced at the 1997 hearing, which included the testimony of three mental health professionals. In 1997, testimony was provided by Dr. Gerald Baker who, at the request of the parties, was appointed by the trial court to conduct psychological evaluations of them. It was Dr. Baker's opinion that Mr. Kyle should be Caleb's primary domiciliary parent. Additionally, Ms. Mikel Frazier testified on behalf of Mr. Kyle, recommending that he be named the domiciliary parent; and Dr. Mark Vigen testified on behalf of Mrs. Martin.
At the 2000 hearing, testimony was given by four additional mental health professionals, including the two MCH evaluators, who, as previously stated, concluded that Mr. Kyle should be the primary domiciliary parent. In addition to the evaluators, Ms. Frazier testified again since she had counseled Mr. Kyle on anger management following the previous hearing in 1997. In addition, Reverend Donald Heacock, a board certified social worker and ordained minister, testified regarding his evaluation of Mrs. Martin and his observations of her with her children. Rev. Heacock testified that, in his opinion, Mrs. Martin should be Caleb's primary domiciliary parent. Rev. Heacock's opinion was based in large part on his reluctance to have Caleb separated from his half-sister, Kaycie. Testimony was also adduced from co-workers and family members of both parties.
Based on the above evidence, and after applying the factors from La. C.C. art. 134, the trial court awarded primary domiciliary status for the school year to Mr. Kyle and domiciliary status for the summer months to Mrs. Martin. During the school year, Mrs. Martin has Caleb on the first, third and fifth weekends of each month. In an effort to split physical custody as equally as possible, the trial court gave Mrs. Martin all of the Thanksgiving Holiday and Spring Break with Caleb. The parties split the Christmas holiday. During the summer, Mr. Kyle has Caleb five weekends.

DISCUSSION
A trial court's determination of custody is entitled to great weight and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. Lee v. Lee, 34,025 (La.App.2d Cir.8/25/00), 766 So.2d 723, writ denied, 2000-2680 (La.11/13/00), 774 So.2d 150; Roberie v. Roberie, 33,168 (La.App.2d Cir.12/8/99), 749 So.2d 849; Shaw v. Shaw, 30,613 (La. App.2d Cir.6/24/98), 714 So.2d 906, writs denied, 98-2414 (La.11/20/98), 729 So.2d 556 and 98-2426 (La.11/20/98), 729 So.2d 558. The best interest of the child is the sole criterion to be met in awarding or modifying custody under La. C.C. art. 131. La. C.C. art. 134 outlines the factors in determining the best interest of the child:

*1243 The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
As previously stated, the trial court in 1997 entered a considered decree designating Mr. Kyle as the primary domiciliary parent, but specifically stated that such designation was without prejudice, i.e., would be reconsidered by the court when Caleb became school age, at which time the week-to-week physical custody arrangement would no longer be feasible. In 2000, when the trial court was called upon to reconsider the implementation plan, it was faced with two loving, capable parents who both desired to be Caleb's "school year" domiciliary parent. While extremely fortunate for Caleb, this situation makes the legal determination of which parent should have primary physical custody difficult. The trial court recognized the difficulty of its task and, in its discretion, determined that it would be in Caleb's best interest to live with his father during the school year and his mother during the summer.
In its oral reasons for judgment, the trial court engaged in a thoughtful and thorough application of the evidence presented at both the 1997 and 2000 trials. The trial court stated each factor as set forth above and described the evidence relevant to that factor. Again, it is clear from the record and the reasons for judgment that both Mr. Kyle and Mrs. Martin are loving, nurturing parents to Caleb and are capable of providing a suitable home for him. In that regard, the trial court found both parents exhibited positive attributes as described in the majority of factors enumerated in the statute. The trial court, however, did note that, pertaining to factor 8, "Caleb, who was born in Homer, Louisiana, has a longer history with Mr. Kyle's home, Mr. Kyle's community of Homer, Louisiana, and his extended network than he does with Mrs. Martin's present home." Regarding factor 11, the court emphasized the "significant one hundred mile distance" between the parents which resulted when Mrs. Martin moved out of state because of Mr. Martin's employment. In addition, the majority of expert testimony favored Mr. Kyle as the primary domiciliary parent.
Mrs. Martin's primary argument on appeal concerns the issue of separating Caleb from his half-sister, Kaycie. As previously stated, Mrs. Martin is Kaycie's primary domiciliary parent subject to weekend and summer visitation with her father. Since Kaycie lives with Mrs. Martin during the school year and spends the *1244 majority of the summer with her father, Mrs. Martin argues that the current custody arrangement will not allow the two children sufficient time together to maintain and foster the sibling bond. In support of her position, Mrs. Martin cites Howze v. Howze, 99-0852 (La.5/26/99), 735 So.2d 619, and Roberie v. Roberie, supra, both of which were cited, but distinguished, by the trial court. These cases establish the general principal that separation of siblings is disfavored and that, whenever feasible, the solidarity of the family should be maintained. We are cognizant of courts' reluctance to separate siblings in most cases, but also remain mindful that custody determinations are made on a case-by-case basis with each being decided based on the best interest of the child or children at issue in the particular case. See Davis v. Davis, 494 So.2d 1315 (La.App. 2d Cir.1986). The supreme court has acknowledged that it is sometimes necessary to separate siblings, Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); and, where it is in the best interest of the child or children to be separated, courts have approved of such arrangements. See Meredith v. Meredith, 521 So.2d 793 (La. App. 2d Cir.1988)(separation of siblings three years apart in age approved); Daugherty v. Cromwell, 501 So.2d 955 (La. App. 2d Cir.1987)(separation of half-siblings approved); Price v. Price, 451 So.2d 1187 (La.App. 1st Cir.1984)(separation of siblings, one of whom was adopted, approved); Wallace v. Wallace, 420 So.2d 1326 (La.App. 3d Cir.1982)(siblings of the same union separated).
Each case involves specific facts and circumstances and each child is unique with different needs and interests. In the case sub judice, the trial court concluded that Mrs. Martin's relocation out of state, Caleb's strong ties to his father and his father's community and the fact that Mr. Kyle is not likely to change where he lives outweighed the concern over separating Caleb and Kaycie. The trial court ordered extensive weekend visitation during the school year to ensure that Caleb would have plenty of time with Kaycie. On this record, we cannot say that the trial court's finding was a clear abuse of its wide discretion. The record makes clear that Kaycie has liberal visitation with her father and that the time that the children actually spent together under the former week-to-week arrangement will not decrease significantly under the new implementation plan. We concur with the trial court that the stability and continuity of environment offered by Mr. Kyle, along with the strong bond Caleb has with his father, override the concern for maximizing time spent with Kaycie. Both Mr. Kyle and Mrs. Martin testified that each would be willing to work with the other to ensure that Caleb and Kaycie continue to share a close sibling relationship. Based on the strong evidence that the best interest of Caleb is a priority in both his parent's lives, we are satisfied that the relationship between Caleb and Kaycie will not suffer as a result of Caleb's living with his father during the school year and his mother during the summer.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs are assessed to Appellant, Toni C. Kyle (Martin).
AFFIRMED.