799 So.2d 753 (2001)
Peggy D. MILLER
v.
David L. MILLER.
No. 01-0356.
Court of Appeal of Louisiana, Third Circuit.
October 31, 2001.
*754 Kathleen Kay, Kathleen Kay, APLC, Lake Charles, LA, Counsel for Plaintiff/Appellant Peggy D. Miller.
Kenneth Badon, Badon Law Firm, Lake Charles, LA, Counsel for Defendant/Appellee David L. Miller.
Michael R. Garber, Lake Charles, LA, Counsel for Defendant/Appellee David L. Miller.
Court composed of ULYSSES GENE THIBODEAUX, JIMMIE C. PETERS and MICHAEL G. SULLIVAN, Judges.
THIBODEAUX, Judge.
Peggy D. Miller appeals a judgment of the trial court disallowing her to relocate with her minor children to another state; awarding joint custody of the children with alternating six-week physical custody periods between her and her former husband, David Miller, failing to name specifically a domiciliary parent; and finding her in contempt of court due to her failure to allow David access to the children. For the reasons set out below, we affirm the trial court's judgment denying Peggy's relocation with the children to Maryland, awarding joint custody of the children to Peggy and David and finding Peggy in contempt of court for failing to allow David to have physical custody of the children from May, 2000 through August, 2000 pursuant to a previously rendered court order to do so. However, we reverse the trial court's judgment *755 that the parents should have physical custody of the children on alternating six-week intervals. We amend the trial court's judgment by designating Peggy as the domiciliary, custodial parent with David, the non-custodial parent, having substantial, rather than equal, time with the children. We remand this matter to the trial court for the purpose of setting specific visitation dates in accordance with this court's opinion.

I.

ISSUES
We will consider whether: (1) the trial court incorrectly concluded that relocation was not in the best interests of the children, (2) the trial court abused its discretion in changing the joint custody plan from alternating one-week periods to alternating six-week periods, (3) the trial court erred in holding Peggy in contempt of court, and (4) the trial court erred in failing to hold David in contempt of court for perjury.

II.

FACTS
Peggy and David married in 1991 and have lived in Lake Charles since that time. They separated in January 1998, and Peggy filed suit for divorce.
On July 23, 1999, Peggy and David entered into a stipulated judgment which granted them joint custody of their three minor children, Karen, Jasmine and David, Jr. The 1999 custody order provided that each parent would have physical custody of the children on alternating weeks. On August 17, 1999, Peggy mailed a certified letter to David notifying him of her intention to relocate to the State of Maryland with the children. Peggy's letter stated that her reason for relocating to Maryland was because she had family who lived there who would give her assistance with the children, which would make it easier to obtain her registered nursing degree. In response to Peggy's intention to relocate to Maryland, David filed a petition objecting to moving his minor children out of Louisiana. He also sought custody of the children. In response to David's filing, Peggy filed a "Rule to Accumulate Arrearages, Contempt of Court, Attorney's Fees and for Income Assignment" and a motion to dismiss David's objection to her relocation to Maryland.
The trial judge stated that he "heard some witnesses but felt that psychological evaluations of the parents and children would be beneficial to the court in determining if relocation would be proper for [the] children." On April 19, 2000, Peggy and David were granted a divorce. After being told by her oldest daughter Karen that David had beaten her and left bruises on her legs, in May, 2000 Peggy did not allow David to visit with the children. In June of 2000, the psychological reports of the experts were completed and the testimonies of two clinical social workers and one psychologist were taken.
The trial court concluded that Peggy's reasons for wanting to relocate to Maryland were more for her interest as opposed to the children's interests. The trial court further found that each parent would be designated the primary custodial parent but modified the original physical custody agreement to alternating six-week intervals. With respect to Peggy's contempt of court, the trial court concluded that Peggy violated the court's order by not allowing David access to the children.

III.

LAW AND DISCUSSION

Appellate Review
A trial court's determination regarding child custody is to be afforded *756 great deference on appeal and will not be disturbed absent a clear abuse of discretion. Hawthorne v. Hawthorne, 96-89 (La.App. 3 Cir. 5/22/96); 676 So.2d 619, writ denied, 96-1650 (La.10/25/96); 681 So.2d 365. Every child custody case must be decided based only on its own particular facts and circumstances. Lindner v. Lindner, 569 So.2d 173 (La.App. 1 Cir.1990).

Consideration of the Factors of La.R.S. 9:355.12 and La.Civ.Code art. 134
Peggy asserts that the trial court committed legal error in failing to consider all of the relocation factors of La.R.S. 9:355.12 and the best-interest-of-the-child factors of La.Civ.Code art. 134 and, therefore, this court should review her case de novo. We disagree. Additionally, Peggy asserts that the trial court's findings with regard to the factors it did consider were manifestly erroneous. To support her argument that the trial court committed a legal error, Peggy cites this court's opinion in Johnson v. Johnson, 99-1933 (La.App. 3 Cir. 4/19/00); 759 So.2d 257, writ denied, 00-1425 (La.5/31/00); 762 So.2d 635.
In Johnson, we reversed the judgment of the trial court that relocation was not in the best interest of the child and awarded custody to the mother, who had relocated to the state of Missouri. We further ordered that the child's mother be named domiciliary parent with the father having physical custody of the child for a minimum of one hundred days. Louisiana Revised Statutes 9:355.12 provides as follows:
In reaching its decision regarding a proposed relocation, the court shall consider the following factors:
(1) The nature, quality, extent of involvement, and duration of the child's relationship with the parent proposing to relocate and with the non-relocating parent, siblings, and other significant persons in the child's life.
(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development, taking into consideration any special needs of the child.
(3) The feasibility of preserving the relationship between the non-relocating parent and the child through suitable visitation arrangements, considering the logistics and financial circumstances of the parties.
(4) The child's preference, taking into consideration the age and maturity of the child.
(5) Whether there is an established pattern of conduct of the parent seeking the relocation, either to promote or thwart the relationship of the child and the non-relocating party.
(6) Whether the relocation of the child will enhance the general quality of life for both the custodial parent seeking the relocation and the child, including but not limited to financial or emotional benefit or educational opportunity.
(7) The reasons of each parent for seeking or opposing the relocation.
(8) Any other factors affecting the best interest of the child.
Louisiana Civil Code Article 134 supplements and to a great extent overlaps with La.R.S. 9:355.12. Article 134 provides as follows:
The court shall consider all relevant factors in determining the best interest of the child. Such factors may include:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.

*757 (3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
In Johnson, we found that the trial court erred in its application of the relocation statute because, "[w]hile the trial court listed [the relocation] factors in its [written reasons for judgment], it did not analyze them as required by La.R.S. 9:355.12." Johnson, 759 So.2d at 259. Thus, in Johnson, we analyzed the factors from the facts in the record. Peggy advocates that because the trial court did not consider all of the factors of La.R.S. 9:355.12, this court should do so. We disagree.
Johnson does not stand for the proposition that the failure of a trial court to give equal weight to each factor in La.R.S. 9:355.12 is an error of law.[1] Louisiana Revised Statutes 9:355.12 states that the court shall consider the listed relocation factors. After noting the applicable statutes, the trial court stated:
Although Ms. Miller's reasons for relocating are in good faith, the court finds that they are more for her interest than for the children. Her reason for being near her extended family members is more personal than the best interest of the children since the children have had virtually no contact with the maternal side of the family. Lake Charles is the only home these children have known and the children have playmates, school mates, ball team members and a rather extensive extended paternal family in the Lake Charles area. Ms. Miller's desire to attend nursing school in the relocation area could be accomplished at the various colleges in the Lake Charles area. The 3rd factor would be a strain to say the least, due to the distance between the parties. The court does not find factor five to be strictly applicable to Ms. Miller, however some of her actions from Easter to present have, as it relates to visitation by the father, tend to raise some doubt in the court's mind as to that factor. Ms. Miller has not met her burden of proof as it relates to factor six. Therefore, the court will deny the relocation of the children.
It is clear the trial court considered all of the evidence in light of the factors listed in La.R.S. 9:355.12, but chose to emphasize only factors three, five and six in its written reasons for judgment. Our review reveals no abuse of discretion with respect *758 to the trial court's decision regarding the relocation.

Physical Custody
Peggy has requested that this court reverse the trial court's judgment ordering equal joint custody, with her and David exercising physical custody of the children in alternating six-week time periods. Peggy also questions the trial court's failure to name a domiciliary parent. Joint custody determinations are governed by La.R.S. 9:335 that provides, to the extent feasible and in the best interest of the child, physical custody should be shared equally. La.R.S. 9:335(A)(2)(b). Each child custody case must be viewed in light of its own particular set of facts and circumstances with the paramount goal of reaching a decision that is in the best interest of the child. Barberousse v. Barberousse, 556 So.2d 930 (La.App. 3 Cir. 1990). The trial court has great discretion in this area, and its determination will not be disturbed in the absence of a clear abuse of discretion. Bagents v. Bagents, 419 So.2d 460 (La.1982); Kuhl v. Kuhl, 97-1725 (La.App. 3 Cir. 7/8/98); 715 So.2d 740.
The fact finder's great discretion extends to its assessment of expert testimony. Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106 (La.1990). The weight to be given expert testimony depends, ultimately, on the facts on which it is based, as well as the professional qualifications and experience of the expert. Meany v. Meany, 94-0251 (La.7/5/94); 639 So.2d 229; Thomas v. Petrolane Gas Service, Ltd. Partnership, 588 So.2d 711 (La.App. 2 Cir.1991), writ denied, 590 So.2d 1201 (La. 1992). For an expert opinion to be valid and merit much weight, the facts upon which it is based must be substantiated by the record; if the facts are not substantiated by the record, the trial court may reject the opinion. Gould v. Gould, 28,996 (La. App. 2 Cir. 1/24/97); 687 So.2d 685; Meany, 639 So.2d 229; Rogers v. Roch, 95-2420 (La.App. 5 Cir. 10/18/95); 663 So.2d 811, writ denied, 95-2769 (La.1/26/96); 666 So.2d 678.
The first prong of a joint custody determination is the feasibility of the plan. In the present case, the trial court ordered the parents to share equal physical custody of the children during alternating six-week periods. While this arrangement may be feasible with respect to the actual movement of the children from one household to another, we find that, for other reasons, the plan is not feasible. The testimony in this case reveals that the parties do not communicate with each other well. Whether justified or not, Peggy testified that she is very fearful of David, and, in fact, during previous exchanges of the children, she has either called the police to escort her or exchanged the children at the police station. Further, it appears that Peggy and David have a lot of animosity toward each other. David suspects that Peggy had sexual relations with other men during their marriage and that the children may not be his biological children. Peggy insists that David is violent unless she does everything he tells her to do. In his testimony, David said that he believes Peggy does drugs and is possibly bisexual. It appears that Peggy and David's relationship has been marked with charges and countercharges of drug abuse, sexual promiscuity, neglect, physical abuse, emotional abuse and violence. Where the parties' testimony reveals that sufficient animosity and rancor exist between them such that they cannot work together to the extent required in a joint custody arrangement, the courts have awarded sole custody. See Watermeier v. Watermeier, 504 So.2d 856 (La.1987); Ard v. Ard, 628 So.2d 1221 (La.App. 3 Cir. *759 1993); Goodwin v. Goodwin, 618 So.2d 579 (La.App. 2 Cir.), writ denied, 623 So.2d 1340 (La.1993); Long v. Long, 458 So.2d 662 (La.App. 3 Cir.1984). While we do not feel the animosity between Peggy and David rises to such a level as to warrant an award of sole custody to one or the other, we do feel that the alternating six-week physical custody plan is not in the best interest of the children. It is foreseeable, due to Peggy and David's inability to communicate, that the children will be subject to differing rules every six weeks. The fact that the children will be in one parent's household for six weeks and the other parent's household the next six weeks will further the disagreement between their parents when the children will be forced to conform their behavior to whichever parent they are living with during a particular six-week period. Such circumstances will not foster the children's best interests. Although it is not necessary that a domiciliary parent be named in a joint custody implementation plan where it is clear that the parents will likely disagree on important decisions about the children, such as recreational activity, school issues and discipline, as in this case, a domiciliary parent should have been named. La.R.S. 9:335(B)(1).
When the court finds that joint custody is in the best interest of the children, it does not necessarily require that the parents equally share physical custody. The legislative scheme providing for joint custody mandates substantial time rather than strict equality of time. La.R.S. 9:335; Nichols v. Nichols, 32,219 (La.App. 2 Cir. 9/22/99); 747 So.2d 120. Therefore, after a thorough review of the record and the factors listed in La.Civ.Code art. 134, we conclude that the trial court clearly abused its discretion in its custody award with respect to the parents alternating physical custody of the children every six weeks and in its failure to designate a domiciliary parent. The evidence reveals that Peggy's job allows her to be home with the children every day after work. To the contrary, the evidence reveals that David's job requires extensive travel, and that he would have to rely frequently on his family's help in caring for the children. In short, Peggy has been the children's primary caregiver even when she and David were married and has continued in this role after they separated and later divorced. Thus, we find that Peggy and David should be awarded joint custody of the children, with Peggy designated as the domiciliary parent with physical custody of the children. David will have substantial custodial visits with the children.

Peggy's Contempt of Court
Peggy argues that she did not willfully and without a justifiable excuse violate an order of the court with respect to disallowing David to see the children. The trial court found that Peggy had no justification for violating the court order allowing David physical custody of the children during the week he was supposed to have the children. We agree.
From May 10, 2000, until the date of the hearing that is the subject of this appeal, Peggy did not allow David visitation with his children. Peggy testified that she disallowed the visitation because the children did not want to see their father. At the time, the custody order provided that the parties were to alternate physical custody of the children on a weekly basis. In connection with Peggy's attempt to grant the children's desire not to visit with their father, Peggy's attorney filed an ex parte motion with the trial court in May, 2000 requesting that her obligation to transfer the children to David be immediately suspended pending a further hearing. The trial court did not act on the motion. On June 9, 2000, Peggy's attorney faxed a *760 letter to the trial court regarding whether the court was going to grant the motion. No action was taken on the motion. At the August, 2000 custody hearing, the trial court indicated that the motion was not granted. Because a custody order was in place allowing David to have physical custody of his children and a request to temporarily suspend that order was not granted, we find that the trial court correctly found that Peggy was in contempt of court when she did not allow David to have physical custody of his children in accordance with the court order.

David's Contempt of Court
The judgment of the trial court did not address the question of contempt of court by David for his allegedly false testimony in a hearing on November 4, 1999. The failure to address acts as a denial. He received checks for $250 on behalf of each child as a result of a personal injury settlement. His testimony and the evidence on June 27, 2000, demonstrated he had cashed the checks in October, 1999. Yet, he testified on November 4, 1999, that he had the checks in his possession. He justified his lapse of memory because of his medical condition on November 4, 1999. Although we entertain serious doubts regarding the truthfulness of his November 4, 1999 testimony, the evidence is insufficient to prove willful deceit under La.Code Civ.P. art. 224(4).

IV.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court insofar as it orders joint custody of the children and concludes that Peggy is in contempt of court for failing to allow David to exercise his custodial rights with the children pursuant to an order of the court. Because we find that joint custody with the parents sharing equal physical custody of the children on alternating six-week periods is not feasible or in the best interest of the children, we order that the mother have physical custody of the children and be named as the domiciliary parent, with the father having substantial time with the children. Therefore, we remand the case to the trial court to establish a meaningful plan of joint custody which provides frequent and continuing contact with the non-domiciliary parent and for the setting of specific visitation dates and parental authority. The Code requires a joint implementation plan. The jurisprudence has interpreted this to mean a plan providing substantial, while not always equal, physical custody for the non-domiciliary parent. The hearing on this matter is to be held within sixty days from the date that this opinion becomes final. Costs of this appeal shall be shared equally between the parties, Peggy D. Miller and David L. Miller.
REVERSED IN PART; AMENDED IN PART AND, AS AMENDED, AFFIRMED; REMANDED WITH INSTRUCTIONS.
NOTES
[1] In fact, the trial court in Johnson listed the factors in its written reasons for judgment. However, the record showed that it did not analyze the factors in reaching its conclusion.