814 So.2d 773 (2002)
Herla Jill HOSKINS, Plaintiff-Appellant,
v.
John Damon HOSKINS, Defendant-Appellee.
No. 36,031-CA.
Court of Appeal of Louisiana, Second Circuit.
April 5, 2002.
*774 Albert E. Loomis, III, Monroe, for Appellant.
Kenneth L. Harper, Jonesboro, for Appellee.
Before BROWN, GASKINS and PEATROSS, JJ.
GASKINS, Judge.
Herla Jill Hoskins Mauldin, the mother of nine-year-old Ashley Hoskins, appeals from a trial court judgment which denied her motion to modify a joint custody plan and which continued the child's father, John Damon Hoskins, as the domiciliary parent. We affirm.

*775 FACTS
The parties were married in August 1990. Of this marriage, one daughter, Ashley, was born (DOB 6/14/92). The parties separated in April 1997. The mother filed for divorce in May 1997, requesting joint custody of the child with herself as domiciliary parent. In June 1997, the father answered and reconvened, asking that he be named domiciliary parent. In July 1997, the father petitioned for divorce based upon the mother's adultery with Bobby Mauldin in April and June 1997.
In August 1997, the parties entered into a consent judgment whereby the father was named domiciliary parent during the school year. The mother was ordered to pay $150 in monthly child support, as well as 30 percent of the child's uncovered major medical expenses. In January 1998, the father filed a motion for judgment of divorce. The judgment was signed in February 1998. In addition to terminating the marriage, the judgment also incorporated by reference the terms of the consent judgment setting child custody and support. In April 1998, the father married his current wife, Karen. In May 1998, the mother married Mr. Mauldin.
In June 2000, the father filed a rule to modify custody to require that the mother's visitation be supervised. He alleged that the mother's living arrangements were unstable; that there was no room for the child at the place where the mother was then residing; that the mother had allowed the stepfather to take the child with him on sales calls and that he would leave the child in the car unattended for excessive periods of time; and that the mother allowed the child to go days without bathing, resulting in urine burns on the child's buttocks which required medical attention. The father further alleged that the mother had violated the joint custody plan by telling the child lies and derogatory comments about the father; he requested that the mother be held in contempt for these violations. A temporary restraining order (TRO) was issued on June 13, 2000, preventing the mother from exercising physical custody of the child pending a hearing.
In July 2000, the mother filed an answer and her own rule to change custody. She claimed that she and the stepfather were living in a three-bedroom house where the child had a room of her own. She denied that the stepfather left the child unattended or in the car for more than five or ten minutes. She claimed that the urine burns were actually chlorine irritation from a swimming pool. She alleged that the father was physically abusive to her and the child and that he was financially unstable. The mother also asserted that the stepmother was raising the child and insisted that the child call her "mother."
On July 28, 2000, the court dissolved the prior TRO against the mother, restored the joint custody plan and granted the mother exclusive custody from the date of the hearing until three days before school resumed. The court further ordered that the parties ensure that the child exercise proper hygiene and that they refrain from making derogatory remarks about each other in the child's presence.
In October 2000, the mother filed a rule for contempt, alleging that the father was persistently tardy in providing the child to her for weekend visitation.
In November 2000, the father filed a motion for contempt, protective order and an increase in child support. He asserted that the mother had not paid child support in September, October and November and was in arrears of $450. He also contended that she had failed to pay her 30 percent of the child's uncovered medical expenses. He requested that the child support be increased. Additionally, the father asserted *776 that the stepfather had a history of sexually abusing children and that he believed that the child had been sexually abused by the stepfather. An order prohibiting contact between the child and the stepfather was issued on November 27, 2000.
Evidence was adduced on December 13, 2000 and August 8, 2001. On August 10, 2001, the trial court gave oral reasons for judgment.[1] It denied the mother's request to transfer custody, instead ordering that the child remain with her father. However, to allow the mother more time with the child, the court granted the mother custody for four weeks beginning at noon the Saturday after school recessed for the summer. At the end of the four-week period, the father would have custody for two weeks. Then the mother would have the child until the Saturday before school resumed. The father would have weekend visitation two weeks into each of the mother's two periods of summer custody. The court also awarded spring break visitation to the mother. The court denied the father's contempt request, finding that the mother was not in arrears as alleged by the father. The court did find that she owed $150 for July 2000; however, it did not find her in contempt because she had good reason to believe it was not owed due to the parties' agreement the previous year that she not pay in July. Child support was increased to $490 per month, retroactive to July 2001, although the mother was not required to pay child support the month of June each year. Judgment was signed September 20, 2001.
The mother appeals.

LAW
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731.
In cases where the original custody decree is a stipulated judgment and the rule of Bergeron v. Bergeron, 492 So.2d 1193 (La.1986), is inapplicable, the party seeking modification must prove (1) that there has been a material change of circumstances since the original custody decree was entered, and (2) that the proposed modification is in the best interest of the child. Evans v. Lungrin, supra.
In determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Cooper v. Cooper, 579 So.2d 1159 (La.App. 2d Cir. 1991); McKinley v. McKinley, 25,365 (La. App.2d Cir. 1/19/94), 631 So.2d 45; Hill v. Hill, 34,104 (La.App.2d Cir.1/24/01), 777 So.2d 1263.
According to La. C.C. art. 134, the relevant factors to be considered in determining the best interest of the child may include the following:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, *777 clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/1/00), 780 So.2d 386. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App.2d Cir.8/31/00), 768 So.2d 219.
Continuity and stability of environment are important factors to consider in determining what is in the child's best interest. Ezell v. Kelley, 535 So.2d 969 (La.App. 2d Cir.1988); Roberie v. Roberie, 33,168 (La.App.2d Cir.12/8/99), 749 So.2d 849; Washkow v. Washkow, 33,965 (La. App.2d Cir.8/23/00), 765 So.2d 1210. A change from a stable environment should not be made absent a compelling reason. Day v. Day, 97-1994 (La.App. 1st Cir.4/8/98), 711 So.2d 793; Roberie, supra.
The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Howze v. Howze, 99-0852 (La.5/26/99), 735 So.2d 619. Normally, the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity. Roberie v. Roberie, supra.
Underlying the trial court's great discretion in child custody cases is its opportunity to better evaluate the credibility of witnesses. Accordingly, the trial court's determination of custody issues is afforded great weight and will not be disturbed on appeal absent an abuse of discretion. Hill v. Hill, supra.

DISCUSSION
We note at the outset that the mother complains that the trial court's oral reasons focused on its reluctance to separate siblings. However, we review judgments and not reasons for judgment. Rogers v. Stockmon, supra.
Ashley's parents separated in April 1997 when she was four years old. Within four months, her mother relinquished physical custody of Ashley to her father in August 1997. Since then, Ashley *778 has been in the primary custody of her father. Under the care of her father and stepmother, she has flourished academically. In first grade, she made straight A's. In second grade, she made four A's and a high B and was an honor roll student. Although she encountered some difficulties early in third grade, she rebounded and was again an honor roll student.
Both parents have suitable homes where Ashley has her own bedroom. Both are gainfully employed. The stepfather is also employed; the stepmother is a housewife. (The trial court specifically found that neither stepparent was detrimental to Ashley.) The household of the father includes Ashley's half-sister, now age three, as well as a nine-year-old stepsister who had been adopted by the father.
The mother argues that she is the better moral influence for Ashley because she regularly attends church and the father does not. However, the record indicates that the mother's regular church attendance is a relatively recent occurrence. Also, her alleged adherence to her religious faithwhich disapproves of gambling has not prevented her or the stepfather from spending considerable time and money at casinos.
The most compelling factor in the instant case is the stability of Ashley's home environment. The record demonstrates that the father has been the main source of consistency and stability in Ashley's young life. This child, who is almost 10 years old, has lived with her father and stepmother since she was barely five years old. Under their supervisionand with minimal involvement by her motherAshley has excelled at school, making above average grades. Following the parents' separation, the mother lived in eight different places and had four different jobs. Until recently, she has shown little interest in Ashley's schooling.
Although there have been some occasional disharmony between Ashley and her adopted sister, that is not uncommon behavior between children. (We note that the age difference between them is only two weeks.) Additionally, the record strongly suggests that many of the problems between these little girls have been instigated by the mother. In fact, the record also indicates that certain problems between the father and stepmother were likewise related to the friction caused between the children by Ashley's mother. Although the father and stepmother considered a separation, the fact remains that they stayed together and their family is intact.[2]
The trial court saw no reason to remove Ashley from a household in which she has thrived for almost half of her life under her father's care and where she has the companionship of her sisters, both adopted and biological. We agree with the trial court that the record demonstrates that it is in Ashley's best interest to remain in the primary custody of her father.

CONCLUSION
The trial court judgment is affirmed. Costs of this appeal are assessed against the appellant, Herla Jill Hoskins Mauldin.
AFFIRMED.
PEATROSS, J., dissents with written reasons.
PEATROSS, J., dissenting.
I respectfully dissent. While I agree with the majority opinion that the best *779 interest of the child standard is the proper standard to apply in the case sub judice, the only reason articulated by the trial judge for continuing primary custody with the father was that siblings should not be separated absent extraordinary circumstances. The father argues that the trial court's determination is entitled to great weight and should not be disturbed on appeal absent a clear abuse of discretion. Shaw v. Shaw, 30,613 (La.App.2d Cir.6/24/98), 714 So.2d 906, writs denied, 98-2414, 98-2426 (La.11/20/98), 729 So.2d 556 and 558. The "abuse of discretion" standard, however, should not be applied here because the trial court committed legal error.
In a change of custody case, as opposed to an average civil proceeding, the trial court has a duty to consider the factors contained in the Louisiana Civil Code. La. C.C. art. 134 states that the court shall consider all relevant factors. Comment (b) to La. C.C. art. 134 states that the list of factors in that article is a guide for the trial court, and there is no authority for reversing a trial court's failure to consider all the listed factors. "[T]rial judges, [however], are not permitted to overlook the factors legislatively enacted to guide their deliberations or point to one factor over all the others which may favor a contrary custody placement." Bynog v. Bynog, 95-173 (La.App. 3d Cir.7/26/95), 663 So.2d 86. In the case sub judice, the trial court failed to make any factual findings of the relevant legislatively enacted factors, and this failure constitutes legal error.
[W]here one or more trial court legal errors interdict the fact-finding process, the manifest error standard is no longer applicable, and, if the record is otherwise complete, the appellate court should make its own independent de novo review of the record and determine a preponderance of the evidence. Ferrell v. Fireman's Fund Ins. Co., 94-1252 (La.2/20/95); 650 So.2d 742, 747, rev'd in part, on other grounds, 96-3028 (La.7/1/97); 696 So.2d 569, reh'g denied, 96-3028 (La.9/19/97); 698 So.2d 1388. A legal error occurs when a trial court applies incorrect principles of law and such errors are prejudicial. See Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La. 1993). Legal errors are prejudicial when they materially affect the outcome and deprive a party of substantial rights. See Lasha, 625 So.2d at 1006. When such a prejudicial error of law skews the trial court's finding of a material issue of fact and causes it to pretermit other issues, the appellate court is required, if it can, to render judgment on the record by applying the correct law and determining the essential material facts de novo. Lasha, 625 So.2d at 1006.
Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731. In Johnson v. Johnson, 99-1933 (La.App. 3d Cir.4/19/00), 759 So.2d 257, writ denied 00-1425 (La.5/31/00), 762 So.2d 635, the trial judge listed the child-relocation factors from La. R.S. 9:355.12, but failed to provide any indication of his weighing, analyzing or consideration of the various relevant factors. The third circuit reversed, holding that the trial court erred "by failing to apply an analysis of the ... [child-relocation] factors to its findings of facts." Although Johnson, supra, involves La. R.S. 9:355.12 (child-relocation statute), that statute, like La. C.C. art. 134, states that a trial court "shall consider the following factors...."[1] Likewise, it is legal *780 error to fail to apply an analysis of the article 134 factors in a child custody case.[2] Since the trial court committed legal error, a de novo review is the proper standard of review and this review encompasses all the relevant factors as revealed by the record.[3]
The first factor at issue in this case is found in La. C.C. art. 134(2) and concerns the capacity and disposition of each party to give the child love, affection and spiritual guidance and to continue the education and rearing of the child. This factor weighs in favor of the mother. Although she has not been the domiciliary parent, she has shown an interest in the child's education by attending school functions and meeting with the child's teacher. Additionally, she gave self-addressed envelopes to the school so that the child's report cards could be mailed to her. The father, on the other hand, does not go to church and is responsible for the child's tardiness to school and absences from school on several occasions. Although the majority of this court is correct in its statement concerning the mother's gambling activities and church attendance, the fact remains that the mother takes the child to church, thus providing spiritual guidance. Moreover, the father did not prove the extent of the mother's gambling activities because she testified that she made cash withdrawals at the casinos for the purpose of eating in the casino restaurants.
The next factors at issue in this case are found in La. C.C. art. 134(4) and La. C.C. art. 134(5) and concern the length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment, and the permanence, as a family unit, of the existing or proposed custodial home or homes. Those factors are relatively equal, even though the mother has moved many times over the past few years. She is currently married and more stable than she was before, and she has stable and suitable housing. The father also has stable and suitable housing, but he did move, requiring the child to change schools.
The next factor at issue in this case is found in La. C.C. art. 134(6) and concerns the moral fitness of each party, insofar as it affects the welfare of the child. This factor is relatively equal. The record shows that the father lived with his current wife out of wedlock prior to that *781 marriage and that the mother "met" her current husband while she was still married and moved in with him shortly after she separated from the father. The majority opinion is correct in stating that the father alleged that the mother committed adultery; however, no evidence was offered to support that allegation and neither party showed that the other party's moral fitness affected the welfare of the child.
The next factor at issue in this case is found in La. C.C. art. 134(7) and concerns the mental and physical health of each party. This factor is also relatively equal; however, it is important to consider the fact that the father works long hours, periodically leaving home at 4:00 a.m., periodically returning home at 8:00 p.m. and working out of town 20 percent of the time, thus making his wife's current physical health relevant. His wife has chronic allergies and has been lax in caring for the daughter in the father's absence.
The next factor at issue in this case is found in La. C.C. art. 134(8) and concerns the home, school and community history of the child. This factor is also relatively equal between the parties. The father has moved and caused the daughter to change schools; but, as previously discussed, both parties' homes appear equally stable and there would be no significant change if the mother was granted primary custody.
The next factor at issue in this case is found in La. C.C. art. 134(9) and concerns the reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference. This factor weighs in favor of the mother because the daughter prefers to live with her.
The next factor at issue in this case is found in La. C.C. art. 134(10) and concerns the willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party. This factor weighs in favor of the mother. The father made allegations that the mother's husband molested the daughter, but there was no evidence presented to show a good-faith basis for bringing such allegations[4]. In fact, the trial judge stated that "[t]he court does not find that ... [the stepfather] is in any way ... detrimental to [the child] in the home of the mother." Such allegations discourage the relationship between the daughter and mother because they are about her husband. In Masters v. Masters, 35,477 (La.App.2d Cir.10/2/01), 795 So.2d 1271, this court stated:
When one parent embarks on a planned course of action to destroy the parent-child relationship between the child and the other parent, this is not in the best interest of the child. When that course of action involves planting in a child's mind knowledge of sexual practices that cannot be reasonably associated with sex education, and the inculcation of that knowledge is falsely attributed to child abuse by the other spouse, it takes no expert to realize that the resulting damage to the child is incalculable. A parent who will deliberately use such means to further selfish interests is acting in his or her own interests, and not in the child's interest. Civilized people abhor *782 and condemn sexual child abuse. Bringing false charges of parental sexual abuse of children, and the deliberate use of the children as pawns to try to validate the charges, is equally despicable and condemnable. Becker, supra.[5] This court agrees with and adopts the foregoing language of Becker. False allegations of sexual abuse are so deleterious to a child that a change in custody is warranted, even under Bergeron, and it is undisputed that ... [the] allegations of sexual abuse were false.
Although the allegations were made about the daughter's stepfather, the focus is on the best interest of the child, and the foregoing language of Masters, supra, should be equally applicable in this case.
The next factor at issue in this case is found in La. C.C. art. 134(11) and concerns the distance between the respective residences of the parties. This factor favors the father because the mother lives in Bossier City, but the daughter currently lives in Ouachita Parish. If the mother was granted primary custody, the daughter would have to move to Bossier City; but, as previously discussed, the daughter has changed schools, and a move to Bossier City would be minimally disruptive.
The next factor at issue in this case is found in La. C.C. art. 134(12) and concerns the responsibility for the care and rearing of the child previously exercised by each party. This factor weighs in favor of the mother. The record shows that the father's work schedule and traveling requirements often require his wife to care for the daughter. As previously stated, the father's wife is chronically ill with allergies, she has caused the child to be tardy for school and she refuses to transport the daughter for scheduled visitations with her mother.
The above enumerated factors, however, are not exclusive. The father and his wife have discussed separating. The record further reveals that the wife, after an argument with the father, knocked a picture off the wall and caused the glass in the frame to shatter. Although the record does not show that the father's wife reacts violently often, it is apparent that the father's wife has a propensity to react violently. This relevant factor, therefore, weighs in favor of the mother.
As previously stated, the only reason articulated by the trial judge for continuing primary custody with the father was that siblings should not be separated absent extraordinary circumstances. In Kyle v. Kyle, 34,696 (La.App.2d Cir.2/28/01), 780 So.2d 1241, however, this court stated:
We are cognizant of courts' reluctance to separate siblings in most cases, but also remain mindful that custody determinations are made on a case-by-case basis with each being decided based on the best interest of the child or children at issue in the particular case. See Davis v. Davis, 494 So.2d 1315 (La.App. 2d Cir.1986). The supreme court has acknowledged that it is sometimes necessary to separate siblings, Tiffee v. Tiffee, 254 La. 381, 223 So.2d 840 (1969); and, where it is in the best interest of the child or children to be separated, courts have approved of such arrangements. See Meredith v. Meredith, 521 So.2d 793 (La.App. 2d Cir.1988) (separation of siblings three years apart in age approved); *783 Daugherty v. Cromwell, 501 So.2d 955 (La.App. 2d Cir.1987) (separation of half-siblings approved); Price v. Price, 451 So.2d 1187 (La.App. 1st Cir.1984) (separation of siblings, one of whom was adopted, approved); Wallace v. Wallace, 420 So.2d 1326 (La.App. 3d Cir.1982) (siblings of the same union separated).
The evidence presented in this case shows that there is disharmony between the child and her adopted sister; and, therefore, it is in the best interest of the child to be separated from her siblings.
Five of the enumerated factors in La. C.C. art. 134 weigh in favor of the mother and only one weighs in favor of the father. Additionally, the factor concerning the stepmother's violent propensity weighs against the father because, as previously stated, the father's work schedule requires the stepmother to spend considerable time alone with the child. This de novo review of this record supports the conclusion that the best interests of the child would be served by granting primary custody to the mother. Assuming, arguendo, that the "abuse of discretion" standard of review was proper and the trial judge subjectively considered the relevant article 134 factors, I would still find that the trial court abused its discretion because the best interest of the child is clearly with the mother.
The judgment of the trial court, therefore, should be reversed.
NOTES
[1] The trial court rendered oral reasons on the Friday after the Wednesday when the taking of evidence concluded. Since the new school year began in the parish where the mother lived on the coming Monday, the court felt an immediate decision was necessary and there was insufficient time to prepare written reasons.
[2] Were the father and the stepmother to divorce, the mother might then be in a position to prove that the advantages to the child substantially outweighed the harm likely to be caused by a change of environment. Bergeron, supra.
[1] In the more recent opinion of Miller v. Miller, 01-0356 (La.App.3d Cir. 10/31/01), 799 So.2d 753, the court distinguishes Johnson, supra, stating that "Johnson does not stand for the proposition that the failure of a trial court to give equal weight to each factor in La. R.S. 355.12 is an error of law." In Miller, supra, the mother argued that, because the trial court failed to consider all of the child-relocation factors, legal error was committed and a de novo review was proper. The appellate court disagreed with the mother because it was clear that the trial court had considered all of the evidence, including three of the child-relocation factors. I agree with Miller, supra, that a trial court is not required to consider all of the factors in La. C.C. art. 134, or give equal weight to each factor, but a trial court must consider all relevant factors and make some factual findings regarding its consideration. I believe that the case sub judice is similar to the issue in Johnson and that Miller, and its distinction from Johnson, is inapposite to this present case.
[2] A recent decision of this court in Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/1/00), 780 So.2d 386 (cited in the majority opinion), appears at first glance to be contrary to the opinion expressed in this dissent. In Rogers, supra, this court found that, although the oral ruling of the trial judge focused primarily on the threat posed by dogs owned by the stepfather, the record supported the trial court's ultimate finding that custody should be awarded to the father. A close review of that opinion, however, reveals that the trial court also considered factors 1, 2, 3, 10 and 12 from La. C.C. art. 134.
[3] I note that the majority opinion in the case sub judice states that the "abuse of discretion" standard of review applies to this case, but its subsequent analysis of the relevant factors as found throughout the record more resembles a de novo review.
[4] The majority opinion states that, on November 27, 2000, an order prohibiting contact between the child and the stepfather was issued. That order, however, was an order to show cause why the father's request for a protective order should not be granted. It did not prohibit contact between the child and the stepfather and the father's request for the protective order was subsequently denied.
[5] Becker v. Becker, 613 So.2d 275 (La.App. 3d Cir.1993), writ denied, 614 So.2d 65 (La. 1993).