880 So.2d 956 (2004)
Gary Lynn WALKER, Plaintiff-Appellant
v.
Angie Barmore WALKER, Defendant-Appellee.
No. 38,982-CA.
Court of Appeal of Louisiana, Second Circuit.
August 18, 2004.
*958 Kitchens, Benton, Kitchens & Black, by Paul E. Kitchens, Minden, for Appellant.
James Spivey, II, West Monroe, for Appellee.
Before CARAWAY, DREW and LOLLEY, JJ.
LOLLEY, J.
Gary Lynn Walker appeals the judgment of the Third Judicial District Court, Lincoln Parish, Louisiana in favor of Angie Barmore Walker. For the following reasons, the judgment of the trial court is affirmed in part and remanded for further proceedings.

FACTS
Gary and Angie Walker were married on August 1, 1988. They had two children: Lee in June 1988 and James in January 1996. In September 2003, Gary filed a Petition for Divorce, Custody and Determination of Incidental Matters in the trial court, wherein, among other relief sought, Gary requested to be named the domiciliary parent in the plan of joint custody for both children, with reasonable visitation rights to Angie. A trial was set for December 2003, and an interim judgment was entered allowing Gary temporary custody of Lee and Angie temporary custody of James. The children were ordered to be together on weekends, with the parents alternating physical custody on the weekends. This arrangement was dependent upon Lee's health  he suffers from a serious heart ailment.
The trial began on December 7, 2003, and continued on January 5, 2004. On account of the time of year, the trial court entered a supplemental interim judgment effective for the time between the trial's lapse. After the matter was finally concluded, the trial court entered judgment ordering the parents to share joint custody of both Lee and James. As to Lee, the trial court named Gary the domiciliary parent and stated that, during the school year, Lee was to live primarily with his father. As to James, the trial court did not name a domiciliary parent, but determined that Angie would have physical custody of James during the school year. Provisions for weekend, summer-time, and holiday visitation were also set forth in the judgment. From that judgment, Gary appeals the determination as it pertains to James only. Angie has not answered Gary's appeal.

DISCUSSION
On appeal, Gary raises three assignments of error, all of which relate primarily to the physical custody of his and Angie's younger son, James. As explained, the trial court awarded joint custody of both boys to Gary and Angie, with the primary physical custody of James to Angie, and the primary physical custody of Lee to Gary, who was also named Lee's *959 domiciliary parent. Gary argues that the separation of James and Lee by the trial court was in error. However, due to the particular and unusual facts of this case, we determine that the trial court did not err in separating the boys for the following reasons.
The paramount consideration in any determination of child custody is the best interest of the child. La. C.C. art. 131; Hoskins v. Hoskins, 36-031 (La. App.2d Cir.04/05/02), 814 So.2d 773, citing, Evans v. Lungrin, 97-0541 (La.02/06/98), 708 So.2d 731. In determining the best interest of a child in custody cases, there must be a weighing and balancing of factors favoring or opposing custody in respective competing parents on the basis of evidence presented in each particular case. Hoskins, supra.
The separation of children of a family, though sometimes necessary, is a custodial disposition that courts seek to avoid. Howze v. Howze, XXXX-XXXX (La.05/26/99), 735 So.2d 619. Normally, the welfare of children is best served by leaving them together, so they can have the full benefit of companionship and affection. When feasible, a court should shape its orders to maintain family solidarity. Howze, supra, citing Tiffee v. Tiffee, 254 La. 381, 387-388, 223 So.2d 840, 843 (1969).
A trial court's assessment of the probative value of evidence is accorded great weight and will not be disturbed absent a clear abuse of discretion. Stephenson v. Stephenson, 37,323 (La.App.2d Cir.05/14/03), 847 So.2d 175; Hodnett v. Hodnett, 36,532 (La.App.2d Cir.09/18/02), 827 So.2d 1205. On appellate review, the determination of the trial court in establishing or modifying custody is entitled to great weight and will not be disturbed absent a clear showing of an abuse of discretion. Ellinwood v. Breaux, 32,730 (La.App.2d Cir.03/01/00), 753 So.2d 977, citing, Thompson v. Thompson, 532 So.2d 101 (La.1988); Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).
In this case, the trial court was stuck between the proverbial rock and hard place  Lee, a teenager, wanted to live with his father, whereas James, a young child, had a "sense of connectedness" with his mother, whom he had always resided with. The trial court's final decision was more difficult in that James and Lee are fortunate to have two parents who love them and are well suited to care for them. Moreover, the record clearly reflects the bond that James feels with his brother Lee, although Lee is seven and a half years older than James. Finally, we recognize the strong principle that the separation of siblings is not favored in the law.
Here, Lee, who was 15 years old at the time of the trial, expressed his preference to reside with Gary, and the trial court was completely within its discretion in honoring that preference, which notably is a relevant factor under La. C.C. art. 134. Additionally, Gary demonstrated himself to be a willing, active, and conscientious parent of Lee, especially in light of Lee's special medical needs. Thus, the trial court did not err in abiding by Lee's preference and in designating Gary as Lee's domiciliary parent.
That is not to say, however, that the trial court erred in not giving Gary physical custody of James, as well. Whereas Lee's preference as to his own best interest was clearly germane considering his age, the trial court need not consider as a factor pertaining to James' best interest Lee's particular preference to live primarily with his father. In other words, the preference of Lee to live with his father should not dictate to the trial court what would otherwise be in James' best interest. Thus, although the strong disapproval of *960 separating siblings exists in the jurisprudence, under the specific facts of this case, i.e., the 7½ years age difference, the preference of Lee to live with his father, and the bond between James and his mother, we cannot necessarily conclude that the trial court erred in separating these particular children from each other. Therefore, we determine that this assignment of error is without merit.
Gary also argues that the trial court erred in failing to articulate the factors listed in La. C.C. art. 134, which states in pertinent part that "[t]he court shall consider all relevant factors in determining the best interest of the child." Again, we find that this assignment is without merit.
Louisiana C.C. art. 134 states various factors that may be considered in determining a child's best interest; however, the court is not bound to make a mechanical evaluation of all of the statutory factors listed in La. C.C. art. 134, but should decide each case on its own facts in light of those factors. The court is not bound to give more weight to one factor over another, and when determining the best interest of the child, the factors must be weighed and balanced in view of the evidence presented. Rogers v. Stockmon, 34,327 (La.App.2d Cir.11/01/00), 780 So.2d 386. Moreover, the factors are not exclusive, but are provided as a guide to the court, and the relative weight given to each factor is left to the discretion of the trial court. McIntosh v. McIntosh, 33,908 (La.App.2d Cir.08/31/00), 768 So.2d 219.
Our jurisprudence is clear and extensive that a trial court is not required to mechanically evaluate the article 134 factors considered in determining the best interest of a child. We take that to mean that a literal articulation of the factors considered is unnecessary when a trial court reaches a conclusion regarding a child's best interest. Although it would certainly be helpful in reviewing a trial court's disposition pertaining to a child's best interest, the trial court's means of weighing and balancing the article 134 factors need not be specifically stated. Thus, Gary's assignment of error on this issue is without merit.
Finally, Gary maintains that the trial court erred in not naming him specifically as the domiciliary parent of James. Although Angie was not named the domiciliary parent either, she was given primary physical custody of James during the school year, with Gary having alternating weekend visitation. Gary argues that it would be in James' best interest for Gary to be the domiciliary parent, also noting that although he was not chosen as James' domiciliary parent, the trial court did not name Angie as primary domiciliary parent of James either.
Mindful that a trial court's determination regarding a child's best interest is entitled to great deference, we cannot say that in this case the trial court was manifestly erroneous in not naming Gary as James' primary domiciliary parent. Although the record shows Gary to be a loving and caring parent of both boys, the record also reflects Angie's love and dedication to the children. And despite certain perceived weaknesses on behalf of Angie as shown in the record, she also demonstrated efforts to correct those weaknesses, which the trial court noted. Moreover, Angie had positive attributes that counterbalanced the few deficiencies exhibited by Gary. Thus, despite the evident strength of Gary as a parent, Angie was not without her own strengths as a parent, i.e., Gary was not the clearly superior parent in this scenario. So considering, we cannot conclude that the trial court abused its discretion *961 in not naming Gary as James' domiciliary parent.
However, the trial court's determination in not naming Gary as James' domiciliary parent raises the issue of whether the trial court erred in failing to name a domiciliary parent at all. In the case sub judice, the trial court, in its final judgment, stated that it made "no designation at this time of any primary domiciliary parent for James. . . ."[1] Such a move by the trial court is clearly within its province, even when a joint custody decree has been entered. Miller v. Miller, XXXX-XXXX (La.App. 3d Cir.10/31/01), 799 So.2d 753. Louisiana R.S. 9:335(B)(1) states that "[i]n a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." Here, there was no "implementation order to the contrary" (i.e., a decree of joint custody was entered between Angie and Gary regarding James and Lee); therefore, it was incumbent upon the trial court to show good cause for not naming a primary domiciliary parent of James.[2]
At the conclusion of this trial, the trial court gave oral reasons for judgment, noting the following:
I'm not designating the mother as the primary custodian because I had some very big concerns with your initial poor judgment, moving [your boyfriend] in the house but I do note that you were very frank in all of your answers and very honest in your responses and when you were ordered to have him out of the house, he  he was moved out. But I  I'm not comfortable in awarding you the primary custody. So right now I'm just designated  designating the visitation this way. I do find that you had done the primary childcare with James and that you have a closer bond with him and at his young age I'm loathe to upset that on the stability and I looked at the psychological. In the areas both of you, as I said, are  appear to be very good parents. In the areas that  that there were some question marks on, those are the areas that Mr. Walker appeared to be  do better than you; however, there's some questions as to some of the reliability of that.
Thus, although James was to live primarily with Angie during the school year, the trial court was not "comfortable" in naming her James' domiciliary parent due to Angie's "initial poor judgment." The trial court further indicated that the disposition was temporary, noting that for "right now" the visitation would be so set. However, such an open-ended conclusion does not meet the standard of "good cause" needed to support a decision not to name a domiciliary parent for James and only invites future *962 litigation on the part of the Walkers. This is not to say that the trial court necessarily must name a domiciliary parent for James; however, a determination not to make such a designation must be supported by good cause greater than the trial court's comfort level so as to give some finality and stability to this family. Therefore, we remand the case to the trial court to either show good cause for not naming a domiciliary parent for James as required by La. R.S. 9:335(B)(1) or, in the absence of such good cause, for the trial court to name either Angie or Gary as James' domiciliary parent.

CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed in part and remanded to the trial court with instructions pursuant to La. R.S. 9:335(B)(1). Costs of this appeal are assessed to Gary Walker.
AFFIRMED IN PART; REMANDED WITH INSTRUCTIONS.
NOTES
[1] A domiciliary parent generally has authority to make decisions affecting the child, unless the implementation order states otherwise. La. R.S. 9:335(B)(3); Rogers, supra. Otherwise, "[i]f a domiciliary parent is not designated in the joint custody decree and an implementation order does not provide otherwise, joint custody confers upon the same rights and responsibilities as are conferred on them by the provisions of Title VII of Book I of the Civil Code." La. R.S. 9:335(C).
[2] Although the statute does not define "good cause," in Miller, supra, the trial court likewise ordered joint custody of the children and did not name a domiciliary parent. The Miller court recognized the discretion of a trial court not to name a child's domiciliary parent. However, the Miller court reversed that trial court's decision not naming a domiciliary parent, noting that the Millers were unable to agree on any important decisions regarding their children. Id. at 9, 799 So.2d at 759. Such implies that regarding important decisions affecting a child, an ability to communicate easily and well between the parents might be deemed "good cause" for not naming a domiciliary parent.