704 So.2d 933 (1997)
Richard O'BRIEN, Plaintiff-Appellee,
v.
Rebekah G. Bayles O'BRIEN, Defendant-Appellant.
No. 30001-CA.
Court of Appeal of Louisiana, Second Circuit.
December 10, 1997.
*934 Susan D. Scott, Shreveport, for Appellant.
Sheila Wharton, Shreveport, for Appellee.
Before STEWART, GASKINS and PEATROSS, JJ.
STEWART, Judge.
The defendant, Rebekah G. O'Brien, appeals the judgment of the Twenty-Sixth Judicial District Court, Parish of Bossier, Judge Dewey E. Burchett, Jr., awarding joint custody of the parent's minor son to both the mother and father and designating the father as domiciliary parent. More specifically, Mrs. O'Brien appeals the portion of the judgment naming Mr. O'Brien as domiciliary parent. We affirm in part, reverse in part and remand.

FACTS
Richard and Rebekah O'Brien were married on February 20, 1991. Mr. O'Brien has been in active military duty since the marriage. Mrs. O'Brien gave birth to Daniel Alexander O'Brien, on June 17, 1994, in Turkey. Their last matrimonial domicile was Bossier, Louisiana.
From May through August 1996, Mr. O'Brien was temporarily assigned to Biloxi, Mississippi and came home several weekends during this period. On July 26, 1996, Mr. O'Brien came home for the weekend to find the house in disarray, every bed in the house with dirty sheets, a vase of roses and other circumstances that concerned him. Mr. O'Brien confronted Mrs. O'Brien about what had been going on in the house. Mrs. O'Brien admitted that the things that Mr. O'Brien saw indicated that someone had been there but denied that she was having an affair, and claimed it was her mother having an affair. As a result of the confrontation, Mrs. O'Brien called the police, but no police report was filed. Mrs. O'Brien left the house. Later that day, she returned to pick up their son at Mr. O'Brien's request because Mr. O'Brien was ill.
During the next two weeks, while Mr. O'Brien was on duty in Biloxi, Mrs. O'Brien moved out of the matrimonial domicile with their son. When Mr. O'Brien returned home on weekend leave, he discovered that Mrs. O'Brien had moved.
Richard O'Brien filed a petition for divorce under La.C.C. Art. 102 on August 26, 1996, seeking joint custody and designation as the domiciliary parent of the couple's minor son. On August 29, 1996, Rebekah O'Brien filed a rule for determination of incidental matters, asking for custody, support, alimony pendente lite and use of community movables and immovables.
A hearing was held on October 10, 1996. The trial court awarded the parties joint custody of their minor son designating the father as domiciliary parent. The mother was awarded physical custody of her son every other weekend from Friday at 6:00 p.m. until Sunday at 6:00 p.m., six weeks in the summer, and half of the holidays and birthdays. The court further ordered that when the child was with the mother there was to be no smoking by any member of the household in which she resided or she would not have visitation. The judgment was filed on February 12, 1997. Other relief was granted which is not at issue on appeal.

FAILED TO DESIGNATE MRS. O'BRIEN DOMICILIARY PARENT AND PROPERLY WEIGH LA.C.C. ART. 134
In assignment of error number one, Mrs. O'Brien contends that the trial court erred in failing to designate her as the domiciliary parent and in failing to consider and give appropriate weight to the factors involved in determining the best interest of the minor child as set forth in La.C.C. Art. 134.
*935 Each child custody case must be viewed in light of its unique facts and circumstances with the principal goal of reaching a decision that embodies the best interest of the child. The appellate courts have reiterated the traditional rule that a trial court's custody award will not be disturbed absent a manifest abuse of discretion. Hickman v. Hickman, 459 So.2d 140 (La.App. 2d Cir. 1984). The factors in La.C.C. Art. 134 are provided as a guide to the court in making the fundamental finding as to what disposition is in the best interest of the child. The list of factors is nonexclusive, and the determination as to the weight to be given each factor is left to the discretion of the trial court. Because of the tribunal's better opportunity to evaluate witnesses, and taking into account the proper allocation of trial and appellate functions, great deference is accorded to the decision of the court. McKinley v. McKinley, 25,365 (La.App. 2 Cir. 1/19/94) 631 So.2d 45; Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.1993).
The record reveals that both parties agreed that there was no problem with joint custody. Neither party complains on appeal the trial judge erred in awarding them joint custody of the child, and his decision to do so was factually and legally sound. Therefore, the sole issue before this court is domiciliary custody.
In designating the domiciliary parent, for purposes of joint custody determination, consideration must be given to factors in La.C.C. Art. 134 and any other relevant factors. The principal consideration in every child custody case is the best interest of the child. There is love and affection between the child and both parents. The record supports finding that both parents love their son. The trial court's decision to designate the father as domiciliary parent was based upon factors in La.C.C. Art. 134 and other relevant factors, such as the social and economic stability of Mr. and Mrs. O'Brien. Mr. O'Brien is in the military. Although the father's military duty makes him subject to move, it should not be held against him. Mrs. O'Brien is unemployed and has not worked since the birth of the child. On the other hand, the mother is studying to be an EMT, which is laudable, but an EMT is also the kind of job with varied hours. Mrs. O'Brien affirmed that she would probably have to work the evening or night shift for six months as an EMT basic.
The court also considered the testimony of Mrs. O'Brien, who lives with her mother, her stepfather and her uncle in Dixie Inn, Louisiana. Mrs. O'Brien testified that if she were awarded custody she did not intend to stay with her mother. However, she also testified that "I have no other ways or means to get another place to stay. But I'm in the process of trying to look for a place." Under Mrs. O'Brien's current living conditions, the child sleeps with her. Mrs. O'Brien dismissed her request for possession of the matrimonial domicile. On the other hand, the father has a separate bedroom for the child to sleep in at the family home. The child would not have to be removed from his familiar home environment.
Mr. and Mrs. O'Brien testified regarding domestic problems in the home where Mrs. O'Brien currently lives with their son. During one instance, Mrs. O'Brien and her cousin were threatened by the cousin's abusive boyfriend which prompted her to call Mr. O'Brien to come get their son. By contrast, the child is not subjected to domestic problems in the father's household, and the environment appears stable, safe and secure. It is well settled that stability of environment is a factor to be taken into account in determining what is in the best interest of the child. Bailey v. Bailey, 527 So.2d 1030 (La.App. 2d Cir.1988), writ denied, 528 So.2d 565 (La. 1988); Pahal v. Pahal, 606 So.2d 1359 (La. App. 2d Cir.1992). There was testimony, but no medical evidence, regarding Mrs. O'Brien's smoking, the smoking in her mother's household and the impact upon the child's asthma or allergies. On the other hand, the father has a smoke-free environment.
Furthermore, the court raised concern regarding the mother's activities such as "coming in drunk, not that she does this all the time." After the couple separated, Mrs. O'Brien took the child to visit with his father. She left at eight o'clock in the evening and returned at 2:00 a.m. Mrs. O'Brien admitted *936 coming home inebriated. Also, on July 26, 1996, Mr. O'Brien came home for the weekend to find the house in disarray, every bed in the house with dirty sheets, a vase of roses and other circumstances that concerned him. The trial judge stated "[s]he obviously has a male friend." While there was no evidence that Mrs. O'Brien's male friend was in the household with her and the child overnight, the trial judge stated "somebody's been there." In addition, there were long distance calls that Mr. O'Brien could not identify. Although Mrs. O'Brien did not respond to the interrogatories regarding the long distance bill, she testified that the phone calls are all connected to her friend "Frank" in Alexandria, Virginia. Mrs. O'Brien further testified about one occasion that she went to visit "Frank" and that she has seen him since she left the matrimonial domicile.
The court expressed concern regarding the mother not allowing the father very much visitation during the separation and litigation. She testified "I know he loves his father, and I know his father loves him, too." However, Mrs. O'Brien showed no real interest in promoting a relationship between her son and his father. She testified that the child asked about his father and she told him that his father was at work.
While none of the above factors are sufficient alone to be the basis for a domiciliary parent decision, taken as a whole, we conclude that the evidence supports the decision to make the father the domiciliary parent. The best interest of the child rests in making his permanent domicile with his father. The decision of the trial judge is afforded great weight in child custody matters. Williams v. Williams, 540 So.2d 1013 (La.App. 2 Cir. 1989); Foy v. Foy, 505 So.2d 850 (La.App. 2d Cir.1987). Absent a clear showing of an abuse of discretion, the trial court's award of custody will not be disturbed. Mayeaux v. Mayeux, 93-1603 (La.App. 3 Cir. 6/1/94), 640 So.2d 686. The record does not support a finding the trial judge was clearly wrong. Absent a showing that the trial court was clearly wrong, we cannot change the award of joint custody or the father's being named domiciliary parent of the child.
This assignment of error is without merit.

FAILURE TO ASSURE FREQUENT AND CONTINUING CONTACT WITH BOTH PARENTS AND EQUAL SHARING OF PHYSICAL CUSTODY
In assignment of error number two, Mrs. O'Brien contends that the trial court erred in failing to follow the dictates of La. R.S. 9:335 in that the "visitation" awarded to the mother failed to assure the child frequent and continuing contact with both parents and did not provide for a substantially equal sharing of physical custody of the child.
Joint custody determinations are governed by La.R.S. 9:335 which provides in pertinent part:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
"When the court finds that a decree of joint custody is in the best interest of the child, it does not necessarily require an equal sharing of physical custody." Williams v. Williams, supra at 1016; Hickman v. Hickman, supra. Substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Carroway v. Carroway, 441 So.2d 494 (La.App. 2d Cir.1983). Every child custody case must be viewed on its own peculiar set of facts and the relationships involved, with the paramount goal of reaching a decision which is in the best interest of the child. Each case will depend on the child's age, the parents' situations, and other factors relevant to a particular child custody dispute. Brazan v. Brazan, 93-2369 (La.App. 1st Cir. 6/24/94), 638 So.2d 1176.
In Foy v. Foy, supra, the father was awarded domiciliary custody and the mother *937 was granted physical custody one weekend per month, alternating holidays, and three weeks in the summer, which totaled approximately 48 days per year. In Carroway v. Carroway, supra, the mother was awarded domiciliary custody and the father was granted approximately 83 days of physical custody per year, which was comprised of alternate weekends, alternate holidays, four days during the Christmas season, Father's Day, alternate birthdays, and three weeks in the summer. In both cases, this court reversed and remanded the case to the trial court for implementation of a new joint custody plan. This court held that the non-domiciliary parent was denied frequent and continuing physical contact with the non-domiciliary parent and remanded.
On the other hand, this court pointed out in the Pahal v. Pahal, supra, that "joint custody contemplates sharing of physical custody... although equal sharing of custody is not mandated; substantial time, rather than strict equality of time, is required under scheme providing for joint custody of children." Boyd v. Boyd, 26,292 (La.App. 2 Cir. 12/7/94), 647 So.2d 414, 417; Pahal v. Pahal, supra at 1363; Foy v. Foy, supra at 852; Hickman v. Hickman, supra at 142. It does not necessarily mean a fifty-fifty sharing of time.
In Pahal, supra, the parties were awarded joint custody of their 11-month-old son, with the father designated as domiciliary custodian. The mother appealed claiming the trial court erred in naming the father domiciliary custody and in denying the mother frequent and continuing physical custody of the child.
This court ruled in Pahal that the trial court's award of timesharing in all but the summer months to be reasonable and feasible and in the best interest of the child. Mrs. Pahal was given physical custody every other weekend from Fridays at noon until Mondays at noon and from 9:00 a.m. until 8:00 p.m. on the Mondays that she does not enjoy regular weekend visitation. The trial court's "joint implementation plan provided Mrs. Pahal with approximately 125-135 days of physical custody per year, including holidays. Although the plan did not provide 50-50 timesharing, it promotes stability and continuity in the domiciliary parent's home, which is an important factor in the child's upbringing." Pahal, supra at 1363. Nevertheless, "in order to achieve more equal timesharing, we hold that Mrs. Pahal's summer custody should be extended to six weeks." Pahal, supra at 1364. The amendment provided three additional weeks of custody. See Hickman v. Hickman, supra, which affirmed a custody judgment which allowed the non-custodial parent 130-140 days of physical custody per year.
Distinguishable from Pahal, supra, in the instant case the trial court awarded Mrs. O'Brien approximately 94-98 days of visitation: alternate weekends, alternate holidays, alternate birthdays and six weeks during the summer. Although the alternating weekends provide equal weekend quality time for both parents with their son, like Carroway, supra, the trial court judgment, while characterized as joint custody, denies the mother frequent and continuing contact with her son.
We believe the intent of the statute is not fully achieved. Although the judgment provides the child with the stability of a primary care giver, it fails to provide Mrs. O'Brien with substantial custodial privileges on a frequent and continuing basis. We, therefore, find the trial court was clearly wrong in the amount of visitation awarded as it fails to assure the child frequent and continuing contact with the non-domiciliary parent. The code requires a joint implementation plan, and the jurisprudence has interpreted this to mean a plan providing substantial, while not always equal, physical custody for the non-domiciliary parent.
This assignment of error has merit.

CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court insofar as it makes the father the domiciliary parent. Because it has been one year since the trial, we are unable to determine specific changes or make amendments to the trial court judgment in order to comport with the statutory mandate to allow both parents frequent and continuing contact with the child to the extent feasible. Therefore, we remand the *938 case to the trial court to establish a more meaningful plan of joint custody which provides frequent and continuing contact with the non-domiciliary parent. The hearing on this matter is to be held within 60 days from the date that this opinion becomes final.
AFFIRMED IN PART, REVERSED IN PART and REMANDED.