830 So.2d 448 (2002)
Julie COLLINS, Plaintiff-Appellee
v.
David COLLINS, Defendant-Appellant.
No. 36,629-CA.
Court of Appeal of Louisiana, Second Circuit.
October 23, 2002.
*449 Smith & Jacobs, by E. Charles Jacobs, Counsel for Appellant.
Legal Services of North Louisiana, Inc., by David K. Handelman, New Orleans, Counsel for Appellee.
Before STEWART, GASKINS and HARRISON, (Pro Tempore), JJ.
STEWART, J.
David Collins appeals a judgment of joint child custody which named his former wife, Julie Collins, the domiciliary parent of their two minor children and awarded him visitation every other weekend, specified weeks during summer vacation, and half of holiday periods. The judgment also ordered David to pay monthly child support to Julie in the amount of $579.62. David argues that the trial court erred in failing to implement a fifty-fifty joint custody plan and in failing to calculate child support in accordance with La. R.S. 9:315.9. For the reasons stated herein, we amend the judgment in part to increase David's share of physical custody of the two children, and affirm as amended.

FACTS
David and Julie were married on August 18, 1979. Two children were born of the marriage. The oldest child, Meagan Collins, was born on October 27, 1985. The youngest child, Brandy Collins, was born on October 28, 1997. In August 2001, Julie filed a petition for divorce in which she asked to be designated domiciliary parent pursuant to a joint custody award and to be awarded child support. She also requested other relief which is not at issue on appeal.
When the matter proceeded to trial, the parties agreed that joint custody was appropriate. However, Julie wanted to be named domiciliary parent with liberal visitation awarded to David, whereas David wanted to have co-domiciliary status with equal sharing of custody. There was no disagreement concerning the parties' income, expenses, or costs for purposes of calculating the child support obligation.
Julie was the first to testify. She stated that Meagan was almost sixteen years old and that Brandy was almost four years old. Julie explained that since the parties' separation approximately four months prior to trial, Meagan initially stayed sixty percent of the time with David and forty percent of the time with her. During the month and a half preceding trial, Meagan had been staying with each parent on a weekly basis. Julie testified that she was seeking a change in the custody arrangement because she believed that she needed to begin making more of the decisions. Julie explained that Meagan at times used the parental situation to her own advantage and that Meagan did not care for David's girlfriend. Julie had no objection to David's input on decisions regarding the children. In fact, the couple had no problems with the younger daughter, Brandy, who stayed two days with Julie and then two days with David on a rotating basis.
On cross examination regarding the custody issue, Julie admitted that there had been no major disruptions in the children's lives as a result of equally sharing custody. Neither Meagan's school work nor lifestyle had been affected by the shared custody arrangement; however, Julie did indicate there may have been problems due to the *450 "stress of the separation." Julie testified that when she told Meagan that she was seeking to be domiciliary parent, Meagan indicated that she would be more comfortable staying with her, but that she also wanted to spend time with her father. Julie testified that the parties live about seven miles apart and that Meagan would attend the same school while staying with either parent. With regard to Brandy, Julie testified that the child enjoyed alternating two days with each parent and that there had been no adverse effects from the arrangement. Julie stated that there were no problems with the time the children spent with either parent. Rather, she related any problems in the arrangement to interaction between David's girlfriend and Meagan.
Meagan, the older daughter, testified next. She admitted that she did not like her father's girlfriend and explained that the girlfriend had "kind of bad-mouthed my mom a little bit, but that's about it." Meagan indicated that she felt like she needed to spend equal time with both parents because she loved both of them. She stated that she could not choose between her parents "because I love them both and it's hard." When asked if she would like to continue the alternating week arrangement, she responded, "Yea, I guess."
Next, the trial judge questioned Meagan after having the attorneys and parties step outside the courtroom. After some conversation about school and school activities, during which Meagan indicated that her grades had dropped since her parents' separation, the court made the following statements to her:
Okay. Let me tell you what I'm going to have to do here and if they had been able to agree, you know, about how ya'll would live, that would be one thing, but they haven't been able to agree and so they're going to have to leave it up to me and I generally think that it's not a good idea for children, regardless of how old they are, to switch back and forth one week with one parent and one week with another parent, because I think that young people need to have a certain place, this is home and this is where I keep my clothes and this is where I keep my books and this is where I keep my gear and this is where I keep girls' vernaculars, here's where I keep my cosmetics and my things like that, my private things, so I'm going to have to decide which parent you're going to stay with most of the time. I know you love both your parents and you don't want to make a decision about that. That's not your decision, it's my decision.
The trial judge then told Meagan that he was going to put her with one parent most of the time and that what he ordinarily did was give the other parent visitation every other weekend and half of the holidays and summer. The trial judge then asked Meagan which parent she thought he ought to put her with. Meagan then stated that she felt more comfortable around her mother because she had "been around her most of my life." She also stated that she did not want to say that in front of her father because she did not want to hurt his feelings. Finally, she indicated that she loved both parents the same.
David Collins was the last witness to testify. He stated that he had no problems with the fifty-fifty custody arrangement and had not observed any problems with the children. He stated that the children love both parents and should be able to spend the same amount of time with both parents. He further stated that he would not want to keep the children away from their mother. David indicated that Brandy "is getting along real good." He also stated that Meagan is "getting her little digs in here and there, but she's a *451 teenager" and that he has "adapted to it." David stated that his aunt, who has a good relationship with Meagan and who lives approximately 300 yards from him, ordinarily picks up Meagan from school when she stays with him. Meagan also spends some nights with this aunt when David has to work the graveyard or evening shift. David, who is employed as a day-shift mechanic by International Paper, has to fill in for operator mechanics on vacation about thirteen weeks out of the year. David testified that he would not mind if his daughters spent the night with their mother when he worked graveyard shifts. David concluded his testimony by stating that he and Julie had no problems in working out physical custody arrangements, with each parent being able to call the other when necessary.
Upon submission of the case, the trial judge essentially told the parties the same thing he had told Meagan regarding his duty to make a decision since the parties had not agreed on custody, his views on equally shared custody, and his belief that Meagan and Brandy need to remain together in the same household. The trial judge concluded that Julie was the most logical choice to be domiciliary custodian in the joint custody arrangement. The trial judge granted David visitation every other weekend from 6:00 p.m., on Friday until 6:00 p.m., on Sunday; divided holidays; and three weeks in June, two weeks in July, and one week in August. The trial judge also granted David telephone access and stated that visitation would also be allowed during the week or other weekends as agreed to by the parties. The judgment, which was thereafter rendered, included an award of child support from David to Julie in the amount of $579.62 each month. David was also ordered to pay Julie interim spousal support in the amount of $200 per month. This appeal by David followed.

DISCUSSION
David asserts two assignments of error on appeal. First, he asserts that the trial judge erred in failing to award the parties joint custody of the two children on an equal sharing or fifty-fifty basis. Second, he asserts that the trial court erred in failing to calculate the child support award based on La. R.S. 9:315.9, which is used in a cases of shared custody. We will first address the issue concerning the award of joint custody.
In a proceeding for divorce or thereafter, the court shall award custody of a child in accordance with the best interest of the child. La. C.C. art. 131. Accordingly, each child custody case must be viewed in light of its unique facts and circumstances with the principal goal of reaching a decision that embodies the best interest of the child. O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933, 935. The trial court's determination regarding child custody is entitled to great weight and will not be disturbed absent a clear abuse of discretion. Craft v. Craft, 35,785 (La.App.2d Cir.1/23/02), 805 So.2d 1213; Ellinwood v. Breaux, 32,730 (La. App.2d Cir.3/1/00), 753 So.2d 977.
Regarding decrees of joint custody, La. R.S. 9:335 provides in pertinent part as follows:
A. (1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2) (a) The implementation order shall allocate time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.

*452 (b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Ellinwood, supra; Nichols v. Nichols, 32,219 (La.App.2d Cir.9/22/99), 747 So.2d 120; Pahal v. Pahal, 606 So.2d 1359 (La.App. 2d Cir.1992). Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Ellinwood, supra; Nichols, supra; O'Brien, supra. Joint custody does not necessarily mean a fifty-fifty sharing of time. Nichols, supra. A determination in each case will depend on the child's age, the parents' situations, and other factors relevant to a particular custody dispute. Id.
In the instant case, the parties agreed that joint custody was appropriate. David, though, seeks a joint custody plan that provides for shared custody of the children on an equal basis. He argues that there is no valid or sound reason why shared custody of the two children is not feasible. He points out that prior to the custody hearing, the parties shared custody on an equal basis with no problems and with no adverse effects on the children.
While neither party admitted to the shared custody arrangement having adverse effects on either child, Meagan testified that her grades had fallen during the last six weeks of school "because of everything that's been going on." There were also disruptions in the shared custody arrangement due to problems involving David's girlfriend. Furthermore, Meagan testified in response to the trial court's questioning that she would be more comfortable staying with her mother. David's testimony indicated that he has a complex work schedule which has required him to depend on others to some extent when the girls were staying with him, including depending on an elderly aunt. David's ability to provide the girls with supervision and a stable routine might be impeded by his work schedule, which at times requires him to fill in on the graveyard shift.
The trial court's observations concerning the general desirability of having one location that is the children's primary home where they keep most of their belongings is supported by the provisions of La. R.S. 9:355(B). This provision mandates that the "court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." La. R.S. 9:355(B)(1). The statute further provides that the domiciliary parent is the parent with whom the child shall primarily reside. La. R.S. 9:355(B)(2).
Based on our review of the record, those factual circumstances noted above, and the provisions of La. R.S. 9:355, we cannot say that the trial court erred in awarding joint custody but in failing to provide for equal sharing of physical custody of Meagan and Brandy. On the other hand, La. R.S. 9:355(B)(2) also provides for the allocation of time periods during which each parent shall have physical custody of the child so that the child is assured of having frequent and continuing contact with both parents. The trial court's allocation of time falls far short meeting this requirement.
In Nichols, supra, we noted that an equal sharing of physical custody is not necessarily required; substantial time, rather than strict equality of time, is mandated by the legislative scheme providing for joint custody of children. Although we noted that we do not lay down hard and fast rules and guidelines in these cases, we nevertheless were mindful of our recent *453 jurisprudence which reversed or amended joint custody awards where the non-domiciliary parent was granted less than one hundred days of custody. In Nichols, the wife had visitation one week a month in September through May, two weeks in June, July, and August, and one half of all the major holiday periods. We concluded that under the particular facts of that case the joint custody decision did not provide the wife with substantial custodial privileges on a frequent and continuing basis. Accordingly, we remanded to establish a more meaningful plan of joint custody.
In discussing the time allocation issue in Nichols, supra, this court made reference to our prior decision in O'Brien, supra. In that case we found the trial court to be clearly wrong in the amount of visitation awarded because the award failed to assure the child frequent and continuing contact with the non-domiciliary parent. There the trial court had awarded the mother approximately 94 to 98 days of visitation: alternate weekends, alternate holidays, alternate birthdays and six weeks during the summer. The visitation plan rejected in O'Brien is almost identical to that in the instant case.
It is evident from the record that strong bonds of love and affection exist between the parents and their children in the instant case. Both David and Julie indicate willingness to foster a close and loving relationship between their daughters and each other. Both David and Julie have also exercised responsibility for the care and rearing of their two children. The parties live within close proximity of one another and have demonstrated that they can work together without acrimony for the benefit of their children's care and well-being.
To ensure that Meagan and Brandy continue to benefit from loving relationships with both parents and to provide a schedule of visitation that provides them with frequent and continuing contact with both parents, we will amend the trial court's judgment to provide David with visitation every other week from 6:00 p.m., on Wednesday evening through 6:00 p.m., on Sunday evening during the school year. We also amend the judgment to provide David with summer visitation of three weeks in June, three weeks in July, and two weeks in August, after which the regular school year visitation schedule will resume. In all other respects, the judgment is affirmed.
Since we have not amended the judgment to provided for shared custody, we need not address the second assignment of error raised by David regarding the calculation of child support under La. R.S. 9:315.9. Accordingly, the judgment as it pertains to the award of child support is affirmed.

CONCLUSION
For the foregoing reasons, the judgment providing for joint custody of Meagan Collins and Brandy Collins is amended to provide the father, David Collins, with physical custody every other week during the school year from 6:00 p.m., on Wednesday through 6:00 p.m., on Sunday and with an additional week of physical custody during the month of July and an additional week of physical custody during the month of August. In all other respects, the judgment is affirmed.
AMENDED IN PART and AFFIRMED.