895 So.2d 745 (2005)
Emile George BREWER, Jr., Plaintiff-Appellee
v.
Beverly Leigh Garris BREWER, Defendant-Appellant.
No. 39,647-CA.
Court of Appeal of Louisiana, Second Circuit.
March 2, 2005.
*746 Daye, Bowie & Beresko, APL by Alfred R. Beresko, Shreveport, for Appellant.
Claudius E. Whitmeyer, APLC, Shreveport, for Appellee.
Before STEWART, GASKINS & PEATROSS, JJ.
PEATROSS, J.
In this custody dispute, the mother, Beverly Leigh Garris Brewer ("Beverly"), appeals a determination by the trial court that she and the father, Emile George Brewer, Jr. ("Mickey"), equally share custody of the couple's four-year-old daughter, Taylor. No domiciliary parent was named and the mother was ordered to relocate within 75 miles of the Shreveport area (she resides in Monroe and he resides in Haughton) in order to facilitate the equal sharing of custody when Taylor enters school. The trial judge found both parents to be negative influences on Taylor, pointing out that both admitted having committed a felony. He did not believe it *747 to be in Taylor's best interest to stay with either parent because of their anger toward each other and the effect it was having on the child. He further noted that, had there been a third party relative qualified and willing to take Taylor, he might have awarded custody to that person. Faced with two less than desirable parents, the judge ordered alternating week shared custody, no child support, no designation of domiciliary parent and that Beverly relocate. Beverly now appeals. For the reasons stated herein, we affirm.

FACTS
Beverly and Mickey were married in April 1999 and Taylor was born in October 1999. Initially, the couple resided in Haughton, but later relocated to Amite, Louisiana, where they separated in November 2002. Following separation, Beverly took Taylor from the residence and denied Mickey contact with the child for more than a month. On November 27, 2002, in Bossier Parish, Mickey filed a petition for divorce and custody, seeking an order awarding him temporary custody and seeking a mental health evaluation of the parties and child. The petition included allegations, inter alia, that Beverly drank alcoholic beverages to excess and was mentally unstable. Beverly answered and filed a reconventional demand seeking an order awarding her temporary custody based on the alleged circumstances of the separation. She alleged that, on the night she left Mickey, they had argued and he had put a shotgun under his chin and threatened suicide in front of Taylor. After a series of procedural events, an order was signed directing the parties to share physical custody of Taylor on an alternating week basis pending resolution of the custody matter. Ultimately, after the separation, Beverly moved to the Monroe area where she is enrolled in radiology school and Mickey returned to Haughton. The parties continued to operate under the alternating week visitation schedule through the time of trial of this matter.
The testimony adduced at trial, summarized below, reveals areas of concern for the quality of parenting exhibited by both Beverly and Mickey. Beverly has an eleven-year-old daughter, Pagan, from a prior marriage. Problems arose in the current marriage, many of which centered around Pagan and her relationship with her mother and stepfather. In addition, there is an indication of problematic behavior between Pagan and Taylor. Mickey's mother, Joan Perkins, testified that Pagan was jealous of Taylor, that Beverly allowed Pagan to give Taylor medication as an infant to make Taylor sleep and that Pagan burned Taylor with a cigarette and caused bruises on the child. There was also testimony that Ms. Perkins did not like the child being on antibiotics when ill because she believed that the antibiotics would damage the child's internal organs. The trial judge indicated that Ms. Perkins was not a qualified caregiver for Taylor. Ms. Perkins was convicted of involuntary manslaughter in 1983, knew that Beverly and Mickey smoked marijuana and that Mickey had a drug conviction. In addition, he questioned her credibility, stating that "the grandmother in this case is a convicted felon." Both Mickey and Ms. Perkins testified that she does spend a lot of time with Taylor when the child is in Mickey's custody.
As for Mickey, he admitted in his testimony that he had used illegal drugs in the past, testifying that he and Beverly had smoked marijuana on a daily basis during the marriage. He further tacitly admitted that he had smoked marijuana before and during the custody litigation when he stated that he had quit the previous January, which was while the litigation was ongoing. He admitted that he allowed Taylor to ride *748 on the back of his motorcycle from Shreveport to Ruston, but he did state that he stopped occasionally to make sure she was not falling asleep. Finally, Mickey admitted that he had created a fake identity for himself, including making a fake birth certificate, drivers license and social security card. He testified that he did this because he had lost his drivers license and wanted to continue to drive. Finally, Mickey has a less than stellar employment history, having had 14 jobs over the previous 7 years.
Mickey testified that Beverly was manic depressant, drank excessively and used illegal drugs. He also testified that Beverly did not have control of Pagan, that Pagan was allowed to drink alcohol, smoke cigarettes and spend the night at her boyfriend's house. He stated that he did not want Taylor raised that way.
Mickey also testified that every time Taylor went into Pagan's room, she came out crying. Mickey's father testified that he thought Pagan was mistreating Taylor intentionally and that he had no knowledge of his son's drug use.
Beverly testified that she does not drink excessively, but she admitted to smoking marijuana and taking anti-depressants in the past. She accused Mickey of sending marijuana home in Taylor's bag and of taking Lortab. As previously stated, at the time of the trial, Beverly was currently enrolled in radiology school in Monroe. She testified that she has a good, stable home for Taylor and was planning to enroll her in preschool in Farmerville the following fall. She further testified that Mickey is a good father and it was important for him to have a good relationship with Taylor.
Beverly's witnesses included her mother, Elizabeth Garris, who is a registered nurse. She testified that Pagan and Mickey never had a good relationship. She opined that Mickey was jealous of the time Beverly spent with Pagan after Taylor was born. She further testified that she has seen a close relationship between Pagan and Taylor and that, after Taylor is with her father for a whole week, it takes her two to three days to readjust in Beverly's home.
Beverly's father testified that he had no concern over the accusations that Pagan hit Taylor and that the two girls had a good relationship that should not be severed. He also testified that he had not witnessed Beverly drinking excessively.
There were conflicting accounts presented at trial of how Beverly and Mickey separated. Beverly testified that, one night after she came in from a dinner out with friends, Mickey was angry and the two argued. According to Beverly, Mickey pointed a shotgun at himself and threatened suicide and that is why she left the house and marriage. Mickey and his family deny that anything like this happened and assert that he does not own, and has not ever owned, a shotgun.
Donna George testified for Beverly as an expert in marriage and family counseling. Ms. George testified that Taylor related to her that Mickey had told her to say that Pagan had burned her with a cigarette, but that she really did not. Taylor further told Ms. George that she gets scared of her father when she spills something and he yells at her and that the incident with the gun scared her. Ms. George met with Pagan and described her interaction with Taylor as appropriate. She also testified that Pagan was concerned that Mickey would not let her speak to Taylor when Taylor is in his home. Ms. George, however, did not meet with, evaluate or counsel Mickey or any other member of his family.
The trial court ordered psychological evaluations of Beverly, Mickey and Taylor *749 to be conducted by psychologist Dr. Bruce McCormick. Dr. McCormick's report indicates that there are no psychological deficiencies in either parent that would render the parent incapable of loving and caring properly for Taylor. He stated that both parents "have the intellectual ability to adequately parent their daughter and to understand and follow directives from the Court." He further found both Beverly and Mickey to be loving and caring for Taylor and described them both as "wanting to provide a safe, comfortable home" for her. He noted that Taylor was a happy, well-adjusted child with above average intellectual capabilities. At the conclusion of the initial interviews, Dr. McCormick was made aware of the allegation that Pagan had burned Taylor with a cigarette. He then agreed to talk with Taylor a second time and to interview Pagan. Dr. McCormick noted that Taylor walked into his office and stated in an upbeat and matter of fact tone that "Pegan (sic) burned me with a cigarette." After talking with her, Dr. McCormick concluded that Taylor had been coached to make this report. He further stated that Pagan interacted appropriately with Taylor and he saw no behaviors that would support the negative allegations of abuse to Taylor. Dr. McCormick opined that Taylor would be adversely affected if she were totally separated from Pagan.
Dr. McCormick tailored his evaluation report to the various factors enumerated in La. C.C. art. 134, infra, that are to be considered in determining a shared custody arrangement. He opined that Beverly and Mickey were essentially on equal footing as far as their respective emotional ties with Taylor, their capacities to give love and guidance and their capacities to provide food, shelter and medical care. He further noted that Taylor has been in a stable environment since the separation and that the alternating week arrangement had worked adequately for her. In addition, he found no significant differences in the parents' mental and physical health or their ability to provide a permanent custodial family unit.
On the other hand, Dr. McCormick focused on two areas of major concern in this case, namely, the moral fitness of each party and the willingness and ability of each parent to facilitate a relationship with the other parent. Regarding the moral fitness of each party, Dr. McCormick noted that his impressions of Beverly did not support Mickey's contention that she was "self-indulgent, neglecting and prone to excessive use of alcohol." Ultimately, Dr. McCormick deferred to the trial court's evaluation of factual evidence to be adduced on this issue. Regarding the willingness of the parties to facilitate a relationship with the other parent, Dr. McCormick expressed significant concern over Mickey's extreme negativism regarding Beverly's ability to properly care for Taylor, characterizing Mickey as being "superlatively critical" of Beverly. In contrast, he noted that Beverly stated that she believed Mickey to be a "good dad" and that she "does not doubt his ability to act responsibly" when Taylor is in his care. Leaving open the possibility of factual testimony altering this conclusion, Dr. McCormick stated that Mickey's attitude toward Beverly "may argue strongly against his home as the primary domicile."
The trial court evaluated the above-described evidence and, noting that both parents were lacking in moral fitness and parenting skills, determined that the most appropriate arrangement for Taylor was to continue the current alternating week schedule, with Beverly moving closer to Mickey to facilitate the visitation. This appeal ensued.

*750 DISCUSSION

On appeal, Beverly asserts the following assignments of error (verbatim):
1. The trial court abused its discretion in ordering that the parties equally share physical custody of the four year old minor child while one party lived in Monroe and one lived in Haughton.
2. The trial court erred in finding that equally shared physical custody was required by law or that shared physical custody was deemed to be in the best interest of a child.
3. The trial court erred in ordering Beverly Leigh Garris Brewer to move within seventy-five miles of the Shreveport-Bossier area in order to implement the equal sharing of physical custody when the minor child began school.
4. The trial court erred in not naming Beverly Leigh Garris Brewer as the domiciliary parent in a joint custody arrangement.

Assignments of error numbers 1, 2 and 4: shared custody and domiciliary status
In these assignments, Beverly argues that the trial court erred by not awarding joint custody to the parties and by refusing to designate her as domiciliary parent. She asserts that the trial court, in awarding shared custody with equal physical time, was operating under the erroneous belief that it was required to either award sole custody to one parent or equal sharing of physical custody between the parents. We find no merit in her argument.
Joint custody determinations are governed by La. R.S. 9:335, which provides, in pertinent part, that:
(A)(1) In a proceeding in which joint custody is decreed, the court shall render a joint custody implementation order except for good cause shown.
(2)(a) The implementation order shall allocate the time periods during which each parent shall have physical custody of the child so that the child is assured of frequent and continuing contact with both parents.
(b) To the extent it is feasible and in the best interest of the child, physical custody of the children should be shared equally.
The trial court's finding that joint custody is in the best interest of the child does not necessarily require an equal sharing of physical custody. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061, citing Collins v. Collins, 36,629 (La.App.2d Cir.10/23/02), 830 So.2d 448; Craft v. Craft, 35,785 (La.App.2d Cir.1/23/02), 805 So.2d 1213; Nichols v. Nichols, 32,219 (La.App.2d Cir.9/22/99), 747 So.2d 120. Substantial time rather than strict equality of time is mandated by the legislative scheme providing for joint custody of children. Jones, supra; Collins, supra; Craft, supra; Ellinwood v. Breaux, 32,730 (La.App.2d Cir.3/1/00), 753 So.2d 977; Nichols, supra. Joint custody does not necessarily mean a fifty-fifty sharing of time. Jones, supra; Pender v. Pender, 38,649 (La.App.2d Cir.5/12/04), 890 So.2d 1; Collins, supra; Nichols, supra. Each child custody case must be viewed in light of its unique facts and circumstances with the principal goal of reaching a decision that embodies the best interest of the child. Pender, supra; Jones, supra; Collins, supra; O'Brien v. O'Brien, 30,001 (La.App.2d Cir.12/10/97), 704 So.2d 933. A determination in each case will depend on the child's age, the parents' situations and other factors relevant to that particular custody dispute. Craft, supra; Nichols, supra.
*751 To determine the best interest of the child for a feasible sharing arrangement under La. R.S. 9:335(A)(2)(b), the court must weigh and balance those factors enumerated in La. C.C. art. 134, which provides:
(1) The love, affection, and other emotional ties between each party and the child.
(2) The capacity and disposition of each party to give the child love, affection, and spiritual guidance and to continue the education and rearing of the child.
(3) The capacity and disposition of each party to provide the child with food, clothing, medical care, and other material needs.
(4) The length of time the child has lived in a stable, adequate environment, and the desirability of maintaining continuity of that environment.
(5) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(6) The moral fitness of each party, insofar as it affects the welfare of the child.
(7) The mental and physical health of each party.
(8) The home, school, and community history of the child.
(9) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(10) The willingness and ability of each party to facilitate and encourage a close and continuing relationship between the child and the other party.
(11) The distance between the respective residences of the parties.
(12) The responsibility for the care and rearing of the child previously exercised by each party.
The trial court's determination regarding child custody is entitled to great weight and will not be disturbed absent a clear abuse of discretion. Jones, supra; Pender, supra; Collins, supra; Craft, supra; Ellinwood, supra. An appellate court should be reluctant to interfere with custody plans implemented by the trial court in the exercise of its discretion. Jones, supra, citing Wilson v. Wilson, 30,445 (La.App.2d Cir.4/9/98), 714 So.2d 35.
Regarding the testimony of an expert in a custody matter, after weighing and evaluating expert and lay testimony, the trial court may accept or reject the opinion expressed by any expert. The weight given expert testimony is dependent upon the expert's professional qualifications and experience and the facts upon which the opinion is based. It is within the trial court's discretion to substitute common sense and judgment when such a substitution appears warranted upon the record as a whole. Jones, supra, citing Derbigny v. Derbigny, 34,672 (La.App.2d Cir.4/6/01), 785 So.2d 989; Warlick v. Warlick, 27,389 (La.App.2d Cir.9/29/95), 661 So.2d 706.
In the case sub judice, the trial court was faced with negative, and some conflicting, testimony bearing on both parents' fitness, lifestyles and personal histories. While there was some testimony that both Beverly and Mickey love Taylor and want to provide a comfortable home for her, the majority of the testimony supports the trial judge's conclusion that neither party is the "better" choice for a primary domicile for this child.
We find critical Dr. McCormick's evaluation report which outlines the factors to be considered under La. C.C. art. 134. Dr. McCormick was the only expert who interviewed and evaluated both parents and both children involved in this matter. Based on his evaluations, he concluded, and we concur, that, in most areas, the *752 parties are essentially equally fit and capable of parenting Taylor and providing a home. Significantly, Dr. McCormick remarked about how well-adjusted Taylor appeared to be and that she was clearly bonded with both of her parents as well as with Pagan. In addition, Dr. McCormick noted that he did not believe, based on his limited evaluation, that Pagan was abusive to Taylor and he believed it would be detrimental to Taylor to be separated from her half-sister. Based on the totality of the evidence, we cannot say that the trial court abused its discretion in ruling that the current arrangement, alternating weeks, be continued. Taylor has apparently become accustomed to alternating weeks and seems to be maintaining a strong bond with each parent in this arrangement. The record indicates that no factor weighs strongly in favor of or against Beverly or Mickey; and, therefore, we cannot say that the decision to maintain the current schedule was erroneous.
Next, we find nothing in the record that supports Beverly's assertion that the trial court believed that it must either award sole custody or equally shared custody. Mickey was seeking an award of sole custody and the trial court alluded to the possibility of such an award on the completion of the evidence. It is readily apparent from the record that the trial judge did not find any factual support for altering the current shared custody arrangement and ruled accordingly. We find no error in this ruling.
Regarding the trial court's refusal to designate a domiciliary parent and, in particular, not designating Beverly as domiciliary parent, we note that La. R.S. 9:335(B) provides that "[i]n a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown." In the case sub judice, there is no implementation order to the contrary, as the parties were operating under a previous order of the court to share Taylor on a "week-to-week" schedule pending resolution of Mickey's petition for sole custody. There was no designation of a domiciliary parent in that order. Further, a court's determination that the parties are unable to communicate effectively with each other regarding issues concerning the child may constitute good cause for refusing to designate a domiciliary parent. Walker v. Walker, 38,982 (La.App.2d. Cir.8/18/04), 880 So.2d 956, citing Miller v. Miller, 01-0356 (La.App. 3d Cir.10/31/01), 799 So.2d 753. The record in this case shows that Beverly and Mickey have substantial animosity toward each other, particularly flowing from Mickey to Beverly, that would affect and hinder their ability and willingness to cooperate and reach decisions regarding Taylor. In Walker, supra, a panel of this court concluded that it is within the province of the trial court to determine that no domiciliary parent be named; and, in this case, we conclude that the trial court was justified in refusing to make such designation.

Assignment of error number 3: Beverly's relocation
In this assignment, Beverly argues that there is no support for the trial court's decision that she be required to relocate to within 75 miles of the Shreveport/Bossier area to facilitate the shared physical custody arrangement once Taylor is enrolled in school. To the contrary, the parties' initial marital residence was in Haughton, which is where they lived when Taylor was born. After a brief move to Amite, Mickey returned to Haughton to live. Beverly chose to relocate more than 100 miles away to Monroe to enroll in school. While this court does not desire to penalize Beverly for making the decision *753 to better herself through education, we cannot say that the trial court abused its discretion in ordering her to move closer to the Shreveport/Bossier area when Taylor reaches school age as she was the one who relocated from the area initially. As previously stated, the trial court is vested with great discretion in such matters and we find no abuse of that discretion in its conclusion to have Beverly relocate.

CONCLUSION
For the foregoing reasons, the judgment of the trial court ordering shared physical custody of Taylor Brewer with no designation of a domiciliary parent and further ordering Beverly Leigh Garris Brewer to relocate to within 75 miles of the Shreveport/Bossier area once Taylor is enrolled in kindergarten is affirmed. Costs of appeal are assessed against Appellant, Beverly Leigh Garris Brewer.
AFFIRMED.
GASKINS, J., concurs in part and dissents in part with reasons.
GASKINS, J., concurring in part and dissenting in part.
I concur with the majority's opinion except for assignment of error number three, regarding the order for Beverly to relocate. On that issue, I respectfully dissent. Both parties have had job changes, but the father has had significantly more. The father has had 14 jobs in seven years, many of which involve driving an 18-wheeler. The mother, on the other hand, was in school at the time of trial, and the record does not indicate whether her degree can be obtained at a college or university near Haughton. This hearing to determine custody took place approximately one year before this opinion. It is very likely, based on the history of these parties, that jobs and schooling have since changed. I would remand this issue back to the trial court for reassessment.