SUSAN M. CHEHARDY, Judge.
| .¿This is a dispute over child custody. The mother challenges the district court’s judgment that maintained a 50/50 custody arrangement. She asks us to reverse the trial court’s judgment and to designate her as the primary domiciliary parent. We affirm.
FACTS
Kathleen McGuinness Beaudion (“Kathleen”) filed for divorce from Robert Gregory Beaudion (“Greg”) in January 2004. She requested that she be designated primary domiciliary custodian of the couple’s triplet girls, who were less than a year old at the time.[1] Kathleen was designated primary domiciliary parent on an interim basis, with Greg having visitation.[2]
The parties’ matrimonial domicile was in Metairie in Jefferson Parish, on the south shore of Lake Pontchartrain. Following their separation, Kathleen remained in the Metairie home, while Greg moved to Mandeville in St. Tammany Parish, on the north shore of Lake Pontchartrain. His home is approximately 40 miles from the children’s school in Metairie.
[¡¡On June 28, 2007, the parties entered into a stipulation regarding custody based on the recommendations of the court-appointed custody evaluator, Dr. Stephen York, that Greg be awarded 50/50 custody.[3] Greg did not initially seek enforcement of the 50/50 custody award. In 2008 he filed a rule to enforce the June 28, 2007 stipulation that he be awarded 50/50 custo *357 dy. On January 27, 2009, the hearing officer ruled that the stipulation entered into the record on June 28, 2007 granted Greg 50/50 custody. The hearing officer also appointed a “co-parenting facilitator,” Julie Ruel.[4]
On April 20, 2010, Kathleen filed a motion to modify custody and for contempt. She alleged there had been a change in circumstance since 50/50 custody was ordered in June 2007. Specifically, she alleged that Greg’s work schedule and his living arrangements prevented him from bringing one of the children (K.E.B.) to her necessary weekly rehabilitation and tutoring sessions. Kathleen alleged further that Greg had been physically abusive toward one child; that Greg had difficulty communicating and would not discuss parenting issues with her; and that he sent her verbally abusive text messages.
She also alleged that Greg had instigated altercations between himself and the maternal grandparents in the presence of the children. She asserted that due to Greg’s abusive behavior and anger, it is impossible for her to co-parent with him. Further, she stated he had failed to move closer to the children’s school as recommended by the custody evaluator.
On May 10, 2010, Greg filed a combined rule for contempt, rule to reduce child support, and motion to compel signing of the judgment. His contempt rule |4related to the maternal grandparents’ taking one of the children to the doctor rather than waiting for him to pick up the child for the doctor visit.
Kathleen’s motion and Greg’s rule for contempt were heard by a hearing officer on May 25, 2010. On that day, the hearing officer recommended that custody be modified, finding “it is not in the best interest of the children that the parties continue to have shared custody of the children. This is a high conflict case, the parties have not worked together to resolve parenting issues and the Hearing Officer finds that the actions of the parties have been detrimental to the children.”
The hearing officer recommended a full evidentiary hearing for the designation of a domiciliary parent and a joint custody plan. The hearing officer further recommended that Greg be found in contempt for failure to pay child support and that Greg’s rule for contempt be denied. The recommendation also addressed other matters not before us on appeal.
Kathleen did not object to the hearing officer’s recommendation. On May 28, 2010 Greg filed an objection to the hearing officer’s recommendations “with regard to the denial of contempt on the part of Kathleen Beaudion.” Greg’s objection was set for hearing on June 24, 2010, the date originally assigned to hear any objection to the hearing officer’s recommendations.
On June 24, 2010, Greg filed a supplemental objection to the hearing officer’s recommendation, as well as a request for new trial and/or de novo review of all matters heard. Kathleen filed an exception of prescription and no cause of action regarding the supplemental objection to the hearing officer’s recommendation.
The matters came before the court for hearing on August 16, 2010. The parties and the court agreed to limit the evidentia-ry hearing to the issue of | .^designation of a primary domiciliary parent. On August 17, 2010, the court issued a judgment *358 maintaining the 50/50 custody arrangement.
The trial judge specifically stated,
After hearing the testimony of the parties and the witnesses, the court believes that both parents love their triplet girls; they both have the capacity and disposition to give the children love, affection, and spiritual guidance and to continue the education and rearing of the children; ... since the implementation of the consent judgment, the children have lived in an adequate environment; both parents have the ability of providing permanence, as a family unit, of the existing or proposed custodial home or homes. The court has concerns about the moral fitness of each party, insofar as it affects the welfare of the children. The reason for this concern is on several grounds, but foremost on this issue is the fact that McGuinness played a significant part in having Beaudoin fired from a good job, which has caused him to lose 50% of his income, which has caused a significant negative impact on the children; both parents are physically healthy; the children appear to be coping with their home, school, and community environment, as well as can be expected, considering that during the course of the testimony it is abundantly clear that the parents do not like each other very much. The court is of the opinion that the children are too young to express a preference. The [court] finds that there is a lack of willingness of each party to facilitate and encourage a close and continuing relationship between the children and the other party. The parties live approximately 40 miles from each other but this distance between the respective residences of the parties has not created significant problems; it appears from the testimony that Beaudoin is more of a “hands on” parent than McGuinness. McGuinness relies heavily on her parents to feed the children, bring them to and pick them up from school, and after school activities because she works as a nurse-practitioner. Beaudoin also works, but is able to feed his children, bathe them, make sure they have clean clothes, bring them to and from school and other after school activities.
The witnesses presented by the parties on both sides do not convince the court that the terms of the aforementioned Consent Judgment should be changed or modified to a significant extent.
|„The court feels that it must herein advise the parents of these children that they will be their parents for some time into the future and that, whether they like each other or not, they need to make a better effort to get along -with each other for the benefit of the children, failing which the court will take the appropriate action, if called upon to do so.
Kathleen appeals.
ASSIGNMENTS OF ERROR
On appeal Kathleen asserts the trial court committed legal error in the following respects: (1) by not designating a domiciliary parent when it had previously determined by final judgment that “it is not in the best interest of the children that the parties continue to have shared custody;” (2) by continuing a shared custody arrangement without designating a primary domiciliary parent after testimony by all parties, including the parenting coordinator, that the parents are unable to get along or to effectively co-parent; (3) by failing to designate Kathleen Beaudion the domiciliary parent; and (4) by ordering that the parents continue to be involved in therapy with Julie Ruel.
*359 LAW AND ANALYSIS
I. Effect of Hearing Officer Recommendation
In her first assignment, Kathleen asserts the hearing officer’s recommendation became a final judgment. Kathleen argues the hearing officer made a determination on Kathleen’s motion to modify custody, finding that the shared custody arrangement was no longer in the best interest of the children. Because neither party filed a timely objection to that recommendation, Kathleen contends that after three days, it became a final judgment of the court.
Kathleen points out that Greg’s objection that was timely-filed on May 28, 2010 was only to the denial of the contempt rule. She asserts that because the rules |7of the 24th Judicial District Court made the hearing officer’s recommendation regarding the rule to modify custody a final judgment, the court erred by not designating a domiciliary parent after the eviden-tiary hearing on August 16, 2010. She argues further that the court had no authority to deviate from the interim order because it became a judgment of the court, absent the filing of timely objections.
Kathleen filed a motion to set an eviden-tiary hearing as ordered by the hearing officer, and the hearing was scheduled for June 24, 2010. On June 22, 2010, Greg filed a motion to continue the June 24th hearing because he had to go out of town for a conference. On the same date, Greg filed a supplemental objection to the hearing officer’s recommendation, with a request for new trial and/or de novo review of all matters heard. In that supplemental objection, Greg objected to all the hearing officer’s recommendations.
The hearing was continued to August 16, 2010. On that day, counsel for Kathleen argued her exception of prescription and no cause of action, which she raised regarding Greg’s supplemental objections to the hearing officer’s recommendations. The parties and the court then agreed to go forward on the evidentiary hearing to designate a domiciliary parent.
After hearing testimony from the parties and several other witnesses, the court rendered a judgment that continued the shared custody pursuant to the parties’ prior custody agreement.
Kathleen argues that the trial court was bound by previous orders and could not go beyond the pleadings or expand upon the final judgment. She contends the court erred in failing to address the issue before it. She asserts the trial court erred in considering all of Greg’s objections when his supplemental objections were untimely, and that the court erred in failing to address the issue before it.
La. R.S. 46:236.5(c) provides in pertinent part,
|s(6) ... Any party who disagrees with a judgment or ruling of a hearing officer ... may file a written objection to the findings of fact or law of the hearing officer within the time and manner established by court rule. The objection shall be heard by the judge of the district court to whom the case is assigned. Upon filing of the objection, the court shall schedule a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer. If the judge in his discretion determines that additional information is needed, he may receive evidence at the hearing or remand the proceeding to the hearing officer.
(7) If no written objection is filed with the clerk of court within the time and manner established, the order shall become a final judgment of the court and *360 shall be signed by a judge and appeal-able as a final judgment. The judgment after signature by a district judge shall be served upon the parties in accordance with law.
Rule 24(A)(3)(e), Rules of the 24th Judicial District Court, provide in pertinent part:
A party shall have three (3) days from the receipt of the recommendation or order of the domestic hearing officer to file a written objection to said recommendation or order. Thereafter, the recommendation of the domestic hearing officer shall become the judgment of the court. The objecting party shall file a memorandum on the law and facts with the district court judge within five (5) working days of the date the objection is filed.
Based on these rules, Kathleen contends the trial court erred in failing to adopt the hearing officer’s recommendation. Because Greg’s original objection to the hearing officer’s recommendation specified he was objecting to the denial of his rule for contempt against Kathleen, but did not specify other parts of the recommendation, Kathleen asserts the trial court erred in failing to designate a domiciliary parent after the evidentiary hearing. Kathleen argues the court was without authority to deviate from the interim order because it became a judgment of the court absent the filing of timely objections.
Kathleen cites C.G.D. v. M.W.D., 2000-1492 (La.App. 3 Cir. 2/28/01), 782 So.2d 1128, in which the appellate court held that child-support recommendations by the hearing officer constituted a final judgment, and were not subject to additions by trial court, where neither of the ex-spouses contested the recommendations within the three-day period after the hearing prescribed by the local court rule.
The case at bar is distinguishable, however. Adopting the recommendation of the hearing officer would have little effect here, because the hearing officer simply recommended that the shared custody arrangement be ended and one of the parents be designated as domiciliary parent. The decision was to be made by the district judge after an evidentiary hearing. The hearing officer did not recommend either party as domiciliary parent. Hence, to adopt the hearing officer’s recommendation as a final judgment would not resolve the issues.
In addition, because the recommendation was to hold an evidentiary hearing to decide on a domiciliary parent, the court’s action followed the recommendation. Further, during the hearing, Kathleen’s counsel withdrew her exceptions of no cause of action and prescription, and agreed to go forward with the evidentiary hearing.
A trial judge’s authority to adjudicate a matter is not precluded by a hearing officer’s recommendation:
The objection [to the hearing officer’s findings] shall be heard by the judge of the district court ... [at] a contradictory hearing where the judge shall accept, reject, or modify in whole or in part the findings of the hearing officer. If the judge in his discretion determines that additional information is needed, he may receive evidence at the hearing or remand the proceeding to the hearing officer.
La. R.S. 46:236.5(6); see also, Short v. Short, 09-639 (La.App. 5 Cir. 3/23/10), 33 So.3d 988.
Accordingly, the district judge did not err in proceeding to hear and to rule on the question of whether to continue shared custody. Nor did he err in deciding not to designate a domiciliary parent. That was within the court’s discretion.
*361 II. Continuation of shared custody arrangement
In her second assignment, Kathleen contends,
It is undisputed that the parties in these proceedings are unable to communicate or co-parent on any level, even with the assistance of a co-parenting facilitator. No evidence was presented by either party that this acrimony could be lessened or eliminated so that the parties could make decisions in the best interest of the children. As such, the court committed legal error by failing to designate a primary domiciliary parent.
Kathleen sets out numerous instances to demonstrate that the parties have been unable to co-parent effectively and that there is a high level of acrimony between them.
La. R.S. 9:335(B)(1) provides, “In a decree of joint custody the court shall designate a domiciliary parent except when there is an implementation order to the contrary or for other good cause shown.”
Here, there is an implementation order to the contrary. The appellate record is replete with consent judgments designating co-domiciliary status, custodial time, and holiday visitation. La. R.S. 9:335 guides courts in determining joint custody arrangements, but it does not require that a specific form be used for the implementation plan. Caro v. Caro, 95-0173 (La.App. 1 Cir. 10/6/95), 671 So.2d 516, 518.
Thus, the fact that the consent judgments previously signed by the Beaudions are not titled “implementation orders” is of no consequence.
InFurther, “other good cause shown” as used in La. R.S. 9:335 can refer to the trial court’s evaluation of the parties’ behavior. Kathleen characterized the relationship between her and Greg as one in which effective co-parenting is impossible because the parties can never agree. Nevertheless, after hearing the evidence and observing the parties, the trial judge determined that shared custody is still appropriate and in the best interest of the children.
Even when there is substantial animosity between parents, where they are equally fit and capable of parenting their children and providing good homes, a trial court’s determination that the parties are unable to communicate effectively with each other regarding issues concerning the children may constitute good cause for refusing to designate a domiciliary parent. Brewer v. Brewer, 39,647, p. 13 (La.App. 2 Cir. 3/2/05), 895 So.2d 745, 752.
Pursuant to La. R.S. 9:335(B), the decision whether to designate a domiciliary parent is within the trial court’s discretion. We find no error in the trial court’s ruling on this issue.
III. Failure to Designate Kathleen as Domiciliary Parent
Kathleen argues the evidence strongly suggests it is in the children’s best interest that she be designated the primary domiciliary parent and that Greg’s overnight visitation be limited to every other weekend.
In support of her argument, Kathleen refers to testimony that when Greg has the children, he does not regularly bring K.E.B. to her weekly tutoring or physical therapy. Greg stated he did not bring the child to these sessions because he could not afford it or could not make arrangements to transport her.
In addition, Kathleen cites testimony that Greg was terminated from two jobs partly because he failed to disclose to the employers that he had been [ 12convicted of felony stalking. Kathleen also refers to the unrefuted testimony of her father that he was physically assaulted by Greg, as *362 well as evidence that Greg was verbally abusive to her.
Greg points out that these facts are not new, yet Kathleen has agreed to consent judgments despite these claims.
A parent seeking modification of a stipulated judgment must prove that there has been a material change in circumstances since the original custody decree was entered, and that the proposed modification is in the best interest of the child. Evans v. Lungrin, 97-0541 (La.2/6/98), 708 So.2d 731, 738.
Kathleen fails to set out a change of circumstances that materially affects the welfare of the children. Rather, she has listed numerous troublesome incidents and negative character traits of Greg, but many of these occurred or existed prior to the issuance of Dr. York’s report and the 2007 consent judgment.
The paramount consideration is the best interest of the children. La. C.C. art. 131; Evans, 708 So.2d at 736. La. C.C. art. 132 provides that if the parents do not agree as to who is to have custody, or if their agreement is found not to be in the best interest of the child, the court “shall award custody to the parents jointly.”
The trial judge’s reasons for judgment, listed above, show that he considered the factors for determining the children’s best interest, set out in La. C.C. art. 134. We are unable to say he was clearly wrong or that he abused his discretion in the determination.
IV. Continuation of Therapy with Julie Ruel
Kathleen challenges the court’s order that the parties “continue to be involved in therapy with Julie Carona Ruel to improve ... their co-parenting skills.... ” Kathleen contends the trial court is more focused on regulating the | ^behavior of the parties and does not once discuss or note how this shared custody arrangement is in the best interest of the children.
La. R.S. 9:358.1, et seq., governs appointment of a parenting coordinator. La. R.S. 9:332, et seq., provides that a court may order the parties to mediate their differences in a custody or mediation proceeding.
The trial court’s rulings concerning the appointment of Ruel are confusing. Ruel was first mentioned in the January 27, 2009 stipulations and/or recommendations of the hearing officer. The hearing officer recommended that Ruel be appointed as “co-parenting facilitator” and the parties were directed to submit their issues to her before filing any rules or motions with the court. That recommendation was rendered as a consent judgment by the district court on July 2, 2010. (The delay in making it a judgment was due to disagreement between the parties, despite their having stipulated to these provisions before the hearing officer.)
In the judgment on appeal, as mentioned above, the parties were ordered to continue in “therapy” with Ruel.
As noted in Footnote 4, supra, the Louisiana Revised Statutes provide for appointment of a mediator (La. R.S. 9:332) and a parenting coordinator (La. R.S. 9:358.1), but do not mention a “co-parenting facilitator.”
“Good cause” to appoint a parenting coordinator “includes a determination by the court that either or both parties have demonstrated an inability or unwillingness to collaboratively make parenting decisions without assistance of others or insistence of the court,” and may also include “an inability or unwillingness to comply with parenting agreements and orders or a determination by *363 the court that either or both parties have demonstrated an ongoing pattern of unnecessary litigation, refusal to communicate or difficulty in communicating about and cooperation in the care of the children, and refusal to acknowledge the right of each party to have and maintain a continuing relationship with the children.”
Griffith v. Latiolais, 2010-0754, p. 16-17 (La.10/19/10), 48 So.3d 1058, 1070, quoting from the 2007 Official Revision Comments to La. R.S. 9:358.1.
Greg argues that Ruel functioned in the role of a mediator, citing the court’s requirement that the parties “submit to the facilitator before filing any rules or motions with the court.” He argues that La. R.S. 9:358.1, regarding appointment of a parenting coordinator, is not applicable, but even if it is applicable, there is good cause in this case for the parties to continue to see Ruel.
Courts have the authority to order litigants to mediate their parenting differences by attending therapy or seeking counseling. See Molony v. Harris, 2010-1316, p. 20 (La.App. 4 Cir. 2/23/11), 60 So.3d 70, 83.
This case clearly fits within the description of “good cause” quoted in Griffith, supra. We find no abuse of discretion in the trial court’s continuation of Ruel as parenting coordinator.
DECREE
For the foregoing reasons, the judgment is affirmed. Costs of this appeal are assessed against the appellant, Kathleen McGuinness Beaudion.

AFFIRMED

. We shall refer to the children as K.R.B., K.A.B., and K.E.B. to protect their privacy. They were born on May 1, 2003.

. A judgment of divorce was rendered in February 2005.

.The parties disagree as to whether Dr. York's recommendation was dependent on Greg moving to the south shore. In fact, the transcript of the June 28, 2007 hearing shows the 50/50 arrangement was implemented without mention of Greg moving.

. The Revised Statutes allow for appointment of a mediator (La. R.S. 9:332-9:334) and appointment of a parenting coordinator (La. R.S. 9:358.1-9:358.9). The statutes do not contain the phrase "co-parenting facilitator.”